# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### August 31, 2011 Session

## SNPCO, INC. v. CITY OF JEFFERSON CITY ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Jefferson County**
**No. 21,773     John D. McAfee, Judge**

**No. E2009-02355-SC-R11-CV - Filed March 26, 2012**

This appeal involves the question of whether a city's ordinance banning the sale of fireworks within its city limits implicates Tenn. Code Ann. § 13-7-208(b) (Supp. 2008) which permits pre-existing nonconforming businesses to continue to operate despite a "zoning change." After the City of Jefferson City annexed the property on which a fireworks retailer's business was located, the retailer filed suit in the Circuit Court for Jefferson County seeking compensation for a regulatory taking or, in the alternative, for a declaration that Tenn. Code Ann. § 13-7-208(b) permitted it to continue to sell fireworks. The trial court dismissed the retailer's complaint in accordance with Tenn. R. Civ. P. 12.02(6), and the Court of Appeals affirmed. *SNPCO, Inc. v. City of Jefferson City*, No. E2009-02355-COA-R3-CV, 2010 WL 4272744, at *11 (Tenn. Ct. App. Oct. 29, 2010). We granted the retailer's Tenn. R. App. P. 11 application to clarify the application of the "substantial interference" test in *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466 (Tenn. 2004) to ordinances such as the one involved in this case. We have determined that our decision in *Cherokee Country Club, Inc. v. City of Knoxville* requires consideration of both the terms and effects of the challenged ordinance. Thus, the courts must first determine whether the challenged ordinance relates to the city's "general plan of zoning." If the courts determine that the challenged ordinance relates to the city's general plan of zoning, then, and only then, may the courts ascertain whether the ordinance results in a "substantial interference" with the use of land. Based on this record, we have determined that Jefferson City's challenged ordinance banning the sale of fireworks within its city limits is not related to the city's general plan of zoning. Accordingly, we affirm the judgments of the courts below.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Carl R. Ogle, Jr., Jefferson City, Tennessee, for the appellants, SNPCO, Inc. d/b/a Salvage Unlimited and Shawn R. Wilmoth.

John T. Batson, Jr., Knoxville, Tennessee, for the appellees, City of Jefferson City, Mayor Darrell Helton, Vice Mayor Karen Smith, Councilwoman Ann Cole, Councilman Ray Cain, and Councilman Mark Potts.

**OPINION**

**I.**

Fireworks are often noisy and, on occasion, dangerous when used incorrectly.[1] Accordingly, the Tennessee General Assembly has empowered counties and municipalities to prohibit or restrict the sale of fireworks within their borders.[2] In November 2003, the city council of Jefferson City, acting in accordance with its power to protect the health, safety, and welfare of its residents, enacted an ordinance prohibiting the manufacture or sale of fireworks within its city limits.[3]

Jefferson City is one of several municipalities in Jefferson County. Unlike Jefferson City, Jefferson County did not prohibit or restrict the manufacture or sale of fireworks. Accordingly, in 2006, SNPCO, Inc. opened a store called Salvage Unlimited in Jefferson County just outside the border of Jefferson City and began selling fireworks. SNPCO asserts that it had received $35,000 per year in income from the sale of fireworks alone.

In 2008, Jefferson City annexed property adjacent to its borders. This property included the property on which SNPCO's business was located. SNPCO asked Jefferson City for permission to continue selling fireworks as a pre-existing nonconforming use, but the city refused.

---

[1]The U.S. Fire Administration, an entity of the Department of Homeland Security's Federal Emergency Management Agency, points out that fireworks are considered hazardous materials even though "[i]t would be hard to imagine July 4th festivities in the United States without public displays of fireworks." U.S. Fire Admin., *The Dangers of Fireworks*, at 1 (Topical Fire Research Series, Vol. 5, Issue 4, June 2005), *available at* http://www.usfa.fema.gov/downloads/pdf/tfrs/v5i4.pdf (last visited Mar. 1, 2012).

[2]*See* Tenn. Code Ann. § 68-104-116 (2011). Persons seeking a license to sell fireworks at retail in a new location must obtain a statement from the appropriate county or municipality certifying that the sale of fireworks is permissible. Tenn. Code Ann. § 68-104-105(a) (2011). In addition, all fireworks held for sale at retail in a county or municipality where the retail sale of fireworks is prohibited are considered contraband and subject to forfeiture. Tenn. Code Ann. § 68-104-105(b)(1).

[3]Jefferson City, Tenn., Mun. Code § 7-402 (2004) states that "[i]t shall be unlawful to manufacture or sell fireworks within the city limits of Jefferson City."

On June 10, 2008, less than a week after the annexation, SNPCO filed suit against Jefferson City in the Circuit Court for Jefferson County. SNPCO argued that Jefferson City had unlawfully taken its property without just compensation or, in the alternative, that its fireworks business should be allowed to continue as a "pre-existing business," apparently intending to invoke the protections of Tenn. Code Ann. § 13-7-208(b) (Supp. 2008), which allows previously lawful businesses to continue operating when a change in zoning has suddenly rendered them illegal.

Following a hearing on June 23, 2008, the trial court temporarily enjoined Jefferson City from enforcing its ordinance against SNPCO. After Jefferson City filed a motion to dismiss SNPCO's complaint and to dissolve the injunction, the trial judge, as well as all other judges in the Fourth Judicial District, recused themselves, and a special judge was appointed to hear the case. Following hearings on September 1, 2009 and September 14, 2009, the trial court filed an order on September 30, 2009, dismissing SNPCO's complaint for failure to state a claim upon which relief can be granted and dissolving the temporary injunction. The court found that the combination of Jefferson City's fireworks ordinance and its annexation of the property on which SNPCO's business was located was not an "unlawful taking." The court also concluded that the fireworks ordinance was an "exercise of police power" but that it was not a "zoning or land use ordinance subject to grandfathering protection" under Tenn. Code Ann. § 13-7-208(b).

SNPCO appealed to the Court of Appeals. Despite its success in the trial court, Jefferson City permitted SNPCO to continue selling fireworks while it pursued its appeal. The Court of Appeals affirmed the trial court. *SNPCO, Inc. v. City of Jefferson City*, No. E2009–02355-COA-R3-CV, 2010 WL 4272744, at *11 (Tenn. Ct. App. Oct. 29, 2010). The appellate court determined that SNPCO had waived its regulatory takings claim. *SNPCO, Inc. v. City of Jefferson City*, 2010 WL 4272744, at *2.[4] In addition, the court concluded that the test mandated by *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466 (Tenn. 2004) to determine whether an ordinance must comply with the notice, hearing, and review requirements of the statutes governing the enactment of municipal zoning ordinances did not apply to determinations of whether an ordinance was a "zoning restriction" for the

---

[4]The appellate court's waiver decision is based on SNPCO's failure to include the trial court's dismissal of its regulatory takings claim in the statement of issues in its brief as required by Tenn. R. App. P. 27(a)(4) and its failure to include in its brief an argument supported by authority on the takings issue as required by Tenn. R. App. P. 27(a)(7)(A). *See SNPCO, Inc. v. City of Jefferson City*, 2010 WL 4272744, at *2. By the same token, SNPCO failed to include the regulatory takings issue in its application for permission to appeal to this Court as required by Tenn. R. App. P. 11(b). Thus, even though SNPCO briefly alludes to the takings issue in its "supplemental brief," it has likewise failed to properly preserve this issue for review by this Court. When asked about the status of the regulatory takings issue during oral argument on August 31, 2011, SNPCO's counsel agreed that the "condemnation by regulation" claim was not before the Court.

purpose of the "grandfather" provision in Tenn. Code Ann. § 13-7-208(b). *SNPCO, Inc. v. City of Jefferson City*, 2010 WL 4272744, at *10. Even though the Court of Appeals viewed Jefferson City's fireworks ordinance as "tantamount to a zoning change," it construed Tenn. Code Ann. § 13-7-208(b) strictly against SNPCO and held that "[t]he annexation of SNPCO's property and consequent enforcement of a citywide prohibition of the storage and sale of fireworks does not subject the property to a new zoning restriction or regulation under section 13-7-208(b)(1)." *SNPCO, Inc. v. City of Jefferson City*, 2010 WL 4272744, at *11.

## II.

A motion to dismiss a complaint for failure to state a claim for which relief may be granted tests the legal sufficiency of the plaintiff's complaint. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011); *cf. Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 406 (Tenn. 2002). The motion requires the court to review the complaint alone. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011), or when the complaint is totally lacking in clarity and specificity, *Dobbs v. Guenther,* 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (citing *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986)).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010); *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700. Accordingly, in reviewing a trial court's dismissal of a complaint under Tenn. R. Civ. P. 12.02(6), we must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 894; *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d at 426; Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5-6(g), at 5-111 (3d ed. 2009). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo without a presumption of correctness. *Lind v. Beaman Dodge, Inc.,* 356 S.W.3d at 895; *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700.

## III.

In our constitutional system, it is the sovereign states that possess general "police powers." *See generally Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996); *Estrin v. Moss*, 221 Tenn. 657, 664-65, 430 S.W.2d 345, 348 (1968). State governments may enact any laws reasonably related to the health, safety, welfare, and morals of the people, subject only to the constraints imposed by the federal and state constitutions. *See Motlow v. State*, 125 Tenn.

-4-

547, 589-91, 145 S.W. 177, 188-89 (1912). States may delegate these police powers to local governments. *State ex rel. Lightman v. City of Nashville*, 166 Tenn. 191, 194, 60 S.W.2d 161, 162 (1933). Accordingly, the Tennessee General Assembly has granted municipalities the authority to "[d]efine, prohibit, abate, suppress, prevent and regulate all acts, practices, conduct, businesses, occupations, callings, trades, uses of property and all other things whatsoever detrimental, or liable to be detrimental, to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the municipality, and exercise general police powers." Tenn. Code Ann. § 6-2-201(22) (2011).[5]

In 1935,[6] in addition to its general grant of police power to municipalities, the Tennessee General Assembly granted municipalities the specific power to develop, enact, and implement comprehensive zoning plans. *See* Tenn. Code Ann. § 13-7-201(a)(1) (2011).[7] In the decades following 1935, it became apparent that the enactment of comprehensive zoning laws could affect existing businesses that were already using their property in a manner inconsistent with the restrictions in the new zoning law. When the operator of a legally operating business challenged a zoning law's application to its place of business, the courts, recognizing that a lawful business has a "vested right" to continue operating,[8] weighed the public benefit of the zoning change against the effect of the zoning change on

---

[5]The police powers granted to municipalities in 1935 were broad enough to enable the municipalities to regulate the sale of fireworks. When the General Assembly enacted the state laws relating to the sale, possession, and use of fireworks in 1959, it recognized that some cities had already exercised their police power to restrict or regulate the sale of fireworks. Accordingly, the General Assembly included a provision in the statutes stating that the state statutes "would in no wise effect the validity of . . . any city ordinance further prohibiting or restricting the sale or use of fireworks." Act of Mar. 10, 1959, ch. 159, § 13, 1959 Tenn. Pub. Acts 474, 485 (codified as amended at Tenn. Code Ann. § 68-104-116 (2011)).

[6]Act of Feb. 12, 1935, ch. 44, 1935 Tenn. Pub. Acts 117, 117-22 (codified as amended at Tenn. Code Ann. §§ 13-7-201 to -212 (2011)).

[7]Tenn. Code Ann. § 13-7-201(a)(1) provides, in part:

> For the purpose of promoting the public health, safety, morals, convenience, order, prosperity and general welfare, the board of aldermen, board of commissioners or other chief legislative body of any municipality . . . is empowered, in accordance with the conditions and the procedure specified in this part and part 3 of this chapter, to regulate the location, height, bulk, number of stories and size of buildings and other structures, the percentage of the lot which may be occupied, the sizes of yards, courts and other open spaces, the density of population, and the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes . . . .

[8]4 Edward H. Ziegler, Jr., et al., *Rathkopf's The Law of Zoning & Planning* § 72:2 (4th ed. 2003 & Supp. 2011).

the property owner. *See Rives v. City of Clarksville*, 618 S.W.2d 502, 507-09 (Tenn. Ct. App. 1981).

In 1973, the Tennessee General Assembly replaced the fact-intensive balancing approach used by the courts with a statute permitting an existing business to continue to operate after the enactment of or a change in the zoning laws if it had been operating lawfully before the enactment or change in zoning laws.[9] At all times pertinent to this litigation, Tenn. Code Ann. § 13-7-208(b)(1) provided:

> In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

Tennessee's courts have been called upon to interpret and apply Tenn. Code Ann. § 13-7-208(b)(1) on many occasions. We have characterized the provision as a "grandfather clause." *Smith Cnty. Reg'l Planning Comm'n v. Hiwassee Village Mobile Home Park, LLC.*, 304 S.W.3d 302, 310 (Tenn. 2010). Using a common definition of the phrase, Tennessee's courts have defined a "grandfather clause" as "'an exception to a restriction that allows all those already doing something to continue doing it, even if they would be stopped by the new restriction.'" *Coe v. City of Sevierville*, 21 S.W.3d 237, 243 (Tenn. Ct. App. 2000) (quoting Black's Law Dictionary 629 (5th ed. 1979)); *see also Lamar Tenn., LLC v. City of Hendersonville*, 171 S.W.3d 831, 835 (Tenn. Ct. App. 2005); *Custom Land Dev., Inc. v. Town of Coopertown*, 168 S.W.3d 764, 772 n.4 (Tenn. Ct. App. 2004) (quoting Black's Law Dictionary 706 (7th ed. 1999)).

Including a grandfather clause in the statutes that empower local governments to enact zoning plans reflects the General Assembly's practical understanding that, as a general matter, most real property is being used in some way when it is first zoned, and that a new zoning plan will inevitably be inconsistent, at least in part, with the existing use of particular

---

[9]*See* Act of May 4, 1973, ch. 279, § 1, 1973 Tenn. Pub. Acts 1065, 1066-67 (codified at Tenn. Code Ann. § 13-7-208).

tracts of property. *See Lafferty v. City of Winchester*, 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000). The grandfather clause provides a vehicle for avoiding the legal problems that can arise whenever a newly enacted zoning ordinance or an amendment to a zoning ordinance might otherwise force a property owner to discontinue an otherwise permissible use of the property. *Smith Cnty. Reg'l Planning Comm'n v. Hiwassee Village Mobile Home Park, LLC*, 304 S.W.3d at 310 (quoting *Custom Land Dev., Inc. v. Town of Coopertown*, 168 S.W.3d at 772 n.4).

The grandfather clause in Tenn. Code Ann. § 13-7-208(b)(1) balances two competing interests. On one hand is the interest in permitting local governments to use their delegated zoning authority to protect and advance the health, safety, and welfare interests of their citizens. On the other hand is the interest of established, otherwise legally operating businesses to be able to continue doing business at their present location. *See Custom Land Dev., Inc. v. Town of Coopertown*, 168 S.W.3d at 772 n.4 (quoting *Lafferty v. Winchester*, 46 S.W.3d at 758); *Outdoor West of Tenn., Inc. v. City of Johnson City*, 39 S.W.3d 131, 137 (Tenn. Ct. App. 2000). Tenn. Code Ann. § 13-7-208(b)(1) strikes this balance by permitting certain types of pre-existing businesses to continue to operate even if the business is inconsistent with the zoning classification of the surrounding property. *Lafferty v. City of Winchester*, 46 S.W.3d at 758.

Ambiguities in zoning ordinances that would restrict a property owner's free use of property are construed in favor of the property owner's unrestricted use of the property. *State ex rel. Morris v. City of Nashville*, 207 Tenn. 672, 680, 343 S.W.2d 847, 850 (1961); *421 Corp. v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 36 S.W.3d 469, 475 (Tenn. Ct. App. 2000). The same rule of statutory construction does not apply to the grandfather clause in Tenn. Code Ann. § 13-7-208(b)(1). Once it is determined that a zoning restriction applies to a particular piece of property, any ambiguity in the application of Tenn. Code Ann. § 13-7-208(b)(1)'s grandfather clause must be construed against the landowner because the grandfather clause amounts to an exception to an otherwise valid land use restriction. *Smith Cnty. Reg'l Planning Comm'n v. Hiwassee Village Mobile Home Park, LLC*, 304 S.W.3d at 310 (quoting *Lamar Tenn., LLC v. City of Hendersonville*, 171 S.W.3d at 835-36); *Outdoor West of Tenn., Inc. v. City of Johnson City*, 39 S.W.3d at 135 (citing *Teague v. Campbell Cnty.*, 920 S.W.2d 219, 221 (Tenn. Ct. App. 1995)); *Coe v. City of Sevierville*, 21 S.W.3d at 243 (citing *Teague v. Campbell Cnty.*, 920 S.W.2d at 221).

Property owners seeking to invoke Tenn. Code Ann. § 13-7-208(b)(1) to continue operating their business have the burden of establishing that the statute applies to their business. *Coe v. City of Sevierville*, 21 S.W.3d at 243; *Lamar Adver. of Tenn., Inc. v. City of Knoxville*, 905 S.W.2d 175, 176 (Tenn. Ct. App. 1995). This burden can be satisfied by showing: (1) that "[t]here has been a change in zoning (either adoption of zoning where none

existed previously, or an alteration in zoning restrictions);"[10] (2) that "the use to which they put their land was permitted prior to the zoning change;"[11] (3) that the business was operating when the change in zoning took effect;[12] and (4) that the current business is the same business that was being conducted when the change in zoning occurred.[13]

## IV.

We are called upon in this case to decide whether SNPCO can take advantage of the grandfather provision in Tenn. Code Ann. § 13-7-208(b)(1). This statute must be construed in light of other statutes relating to the same subject or having a common purpose. *See Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010); *Shorts v. Bartholomew*, 278 S.W.3d 268, 277 (Tenn. 2009); *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). The plain language of not only Tenn. Code Ann. § 13-3-208(b)(1), but also of all the related statutes regarding the zoning power of municipalities reflects that the grandfather provision in Tenn. Code Ann. § 13-7-208(b)(1) can only apply when a municipality has enacted a "zoning restriction" or has adopted a "zoning change." Thus, the pivotal question in this case is whether the combined effect of Jefferson City's fireworks ordinance and its decision to annex the land on which SNPCO's business is located is tantamount to a "zoning restriction" or "zoning change" for the purpose of Tenn. Code Ann. § 13-7-208(b)(1).

While this Court has not addressed this issue, it was addressed by the Court of Appeals almost fifteen years ago. *See Smith v. Winchester City Council*, No. 01A01-9609-CV-00419, 1997 WL 92070, at *2-3 (Tenn. Ct. App. Mar. 5, 1997) (No Tenn. R. App. P. 11 application filed). The City of Winchester adopted an ordinance banning the sale of fireworks within the city limits in 1983. Four years later, Winchester annexed additional property into the city. Two businesses were selling fireworks on the annexed property. One business had been selling fireworks legally for nineteen years; the other business had been selling fireworks illegally for one year. The City, invoking Tenn. Code Ann. § 13-7-208(b)(1), permitted the long-time business that had been operating legally to continue selling fireworks at a different location within the city limits but declined to permit the other business that had been operating illegally to sell fireworks. *See Smith v. Winchester City Council*, 1997 WL 92070, at *1.

---

[10]*Lamar Adver. of Tenn., Inc. v. City of Knoxville*, 905 S.W.2d at 176.

[11]*Lamar Adver. of Tenn., Inc. v. City of Knoxville*, 905 S.W.2d at 176.

[12]*See Custom Land Dev., Inc. v. Town of Coopertown*, 168 S.W.3d at 774-75.

[13]*Lafferty v. City of Winchester*, 46 S.W.3d at 758.

The owner of the business that was not permitted to continue selling fireworks filed suit claiming, among other things, that Winchester's fireworks ordinance was a "tyrannical exercise of municipal power." *Smith v. Winchester City Council*, 1997 WL 92070, at *1. The trial court found that the fireworks ordinance "as used by the City Commission,"[14] was a zoning ordinance; however the Court of Appeals disagreed. The Court of Appeals concluded that Winchester's fireworks ordinance "neither fulfills the functions [of zoning] nor fits within the definition [of zoning]." *Smith v. Winchester City Council*, 1997 WL 92070, at *3. It also pointed out that "[t]he operation of the [o]rdinance was in no way connected to the land. This is evidenced by the fact that the Council granted [the owner of the business that continued to sell fireworks] permission to sell fireworks on land other [than] that on which he had previously sold fireworks." *Smith v. Winchester City Council*, 1997 WL 92070, at *3.

The continuing viability of the analysis employed by the Court of Appeals in *Smith v. Winchester City Council* to determine whether the ordinance banning the sale of fireworks was a zoning restriction for the purpose of Tenn. Code Ann. § 13-7-208(b)(1) has never been directly challenged. However, the continuing viability of the appellate court's reasoning became subject to question following this Court's decision in *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466 (Tenn. 2004).

Determining whether an ordinance should be considered a zoning ordinance has significant consequences. The consequence most relevant to this case is that finding that an ordinance is a "zoning restriction" or "zoning change" triggers the application of the grandfather clause in Tenn. Code Ann. § 13-7-208(b)(1).

The *Cherokee Country Club* case did not involve the grandfather provision in Tenn. Code Ann. § 13-7-208(b)(1), but rather the statutory requirements for adopting a zoning ordinance in Tenn. Code Ann. §§ 13-7-202 to -204. The Cherokee Country Club owned property on which a vacant old house was located. After it became known that the club had decided to demolish the house, the City of Knoxville tried to thwart the club's plans. In an effort to save the house from demolition, the City, bypassing its normal zoning procedures, enacted an "emergency" ordinance suspending the issuance of demolition permits for properties within certain zoning classifications – including the zoning classification of Cherokee Country Club's property. The City also filed an application with the planning commission to reclassify the property on which the house was located as an historic district. The Cherokee Country Club was given no notice of the emergency ordinance or of the City's application to reclassify its property. *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 469.

---

[14] *Smith v. Winchester City Council*, 1997 WL 92070, at *2.

The Cherokee Country Club challenged the City's actions in court, alleging that the emergency ordinance was enacted in violation of the zoning statutes' requirements of planning commission approval, public notice, and a public hearing. The City responded that the emergency ordinance was a properly enacted building regulation to which the statutory zoning procedures were not applicable. The trial court sided with Cherokee Country Club, but the Court of Appeals reversed after concluding that the emergency ordinance was a building regulation that was not required to comply with the procedural requirements for enacting or amending zoning restrictions. *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 469-70.

When the case reached this Court, we noted that "[t]he precise contours of determining when an ordinance is a zoning ordinance, and thus subject to statutory zoning requirements . . . are difficult to draw or define." *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 472. After thoroughly reviewing expert treatises on zoning and municipal law, as well as decisions from other jurisdictions, we adopted what we referred to as the "substantial effect" test because we found it to be "well-reasoned" and "persuasive." *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 473. We explained that the value of a case-by-case approach in the "substantial effect" test arose from the test's focus "on both the terms and the effect of the ordinance, as well as its 'relation to the general plan of zoning.'" *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 473 (quoting 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.53 (3d ed. 2004)).

When we applied the "substantial effect" test to the facts of the *Cherokee Country Club* case, we first analyzed the relationship of the ordinance at issue to the City's general plan of zoning. *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 472-74 (noting that "[o]ne leading authority states that determining whether a zoning ordinance exists requires 'a consideration of the substance of its provisions and terms, and its relation to the general plan of zoning in the city'" (quoting 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.53 (3d ed. 2004))). The challenged ordinance applied to "property" based on the property's zoning classification,[15] and, accordingly, we noted that "the terms and effect of the . . . ordinance enabled the City to create a de facto historic district." *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 476. Accordingly,

---

[15]The City's ordinance applied to "'any property under review and consideration for an H-1 overlay or NC-1 overlay designation after the application process has been initiated in accordance with the procedures set forth in Article IV, § 14 and § 22, respectively, of the Knoxville Zoning Code.'" *See Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 469 (quoting Knoxville, Tenn., Emergency Ordinance 0-119-00 (Apr. 4, 2000)).

we concluded that the challenged ordinance was so integrally related to the City's zoning ordinance that it was tantamount to zoning.[16]

After we determined that the challenged ordinance was closely connected with the City's zoning ordinance, we turned our attention to whether the ordinance "substantially affected" Cherokee Country Club's use of its property. The effect of the emergency demolition ordinance was to create a "de facto historic district." *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 476. The creation of this district not only prevented Cherokee Country Club from demolishing the house, it also prevented the club from putting its property to other uses permitted by the City's general plan of zoning. Thus, we found that the "permanent moratorium on a specific use of property" substantially affected the club's use of its property. *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 476.

Including this case, the Court of Appeals has had three opportunities to apply the *Cherokee Country Club*'s "substantial effect" test to three municipal ordinances. The ordinance in this case involved an ordinance banning the sale of fireworks. The other cases involved ordinances banning the collection of scrap metal[17] and regulating the use of parked tractor-trailers.[18] The somewhat inconsistent results in these cases may be due to the manner in which the appellate court applied the *Cherokee Country Club* test. In each of these cases, the Court of Appeals analysis focused chiefly on whether the challenged ordinance substantially affected the use of property without analyzing the extent to which the challenged ordinance was so closely related to the city's zoning plan that it should be considered as tantamount to a zoning ordinance.

This case provides an opportunity to restate the "substantial effects" test we adopted in *Cherokee Country Club, Inc. v. City of Knoxville*. It is actually a two-part test that examines both the terms and the effects of the challenged ordinance. The first step requires courts to review the terms of the challenged ordinance and the municipality's comprehensive zoning plan to determine whether the ordinance is so closely related to the zoning plan that

---

[16]In support of our decision in the *Cherokee Country Club* case, we cited two decisions by the North Carolina Court of Appeals finding that a moratorium on the issuance of building permits "'had the effect of making unzoned areas . . . subject to zoning restrictions prior to the adoption of a zoning ordinance.'" *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 473 (quoting *Vulcan Materials Co. v. Iredell Cnty.,* 407 S.E.2d 283, 286 (N.C. Ct. App. 1991); *see also Sandy Mush Props., Inc. v. Rutherford Cnty.*, 595 S.E.2d 233, 236 (N.C. Ct. App. 2004) (following *Vulcan Materials Co. v. Iredell Cnty.*, 407 S.E.2d 283, 286 (N.C. Ct. App. 1991)).

[17]*See Metropolitan Gov't of Nashville & Davidson Cnty. v. Buchanan*, No. M2004-01716-COA-R3-CV, 2006 WL 249512, at *1 (Tenn. Ct. App. Feb. 1, 2006) (No Tenn. R. App. P. 11 application filed).

[18]*See Town of Smyrna v. Bell*, No. M2010-01519-COA-R3-CV, 2011 WL 5184117, at *1 (Tenn. Ct. App. Oct. 31, 2011) (Tenn. R. App. P. 11 application filed Dec. 14, 2011).

it can be fairly characterized as tantamount to zoning.  The second step requires the courts to determine whether the challenged ordinance substantially affects the use of the property that is the subject of the litigation.  Both parts of the test must be satisfied before a challenged ordinance may be held to be tantamount to zoning.

## V.

We now apply the two-part *Cherokee Country Club* "substantial effect" test to Jefferson City's ordinance banning the sale of fireworks.  Turning first to the text of the ordinance and the ordinance's relationship to the City's comprehensive zoning plan, we note that the ordinance does not refer to nor does its operation depend upon the City's zoning plan.  In addition, the fireworks ordinance does not refer to land, zones, buildings, lot lines, or any other terms and concepts customarily associated with comprehensive zoning plans.  The blanket command in the fireworks ordinance that "[i]t shall be unlawful to manufacture or sell fireworks within the city limits of Jefferson City"[19] bears little resemblance to the ordinance at issue in *Cherokee Country Club, Inc. v. City of Knoxville* that involved only "property" that was "under review and consideration for an H-1 overlay or NC-1 overlay designation."[20]

Unlike the Knoxville ordinance that was integrally connected with the "Knoxville Zoning Code,"[21] Jefferson City's ordinance reflects the exercise of the City's traditional, general police power granted in Tenn. Code Ann. § 6-2-201(22).  The Jefferson City ordinance at issue in this case falls squarely within the general police powers traditionally exercised by government.  This power "embraces all matters reasonably deemed necessary or expedient for the safety, health, morals, comfort, domestic peace, private happiness, and welfare of the people."  *Estrin v. Moss*, 221 Tenn. at 665, 430 S.W.2d at 348 (quoting *McKesson & Robbins, Inc. v. Government Emps. Dep't Store, Inc.*, 211 Tenn. 494, 499, 365 S.W.2d 890, 892 (1963).  Several courts have endorsed the "common knowledge" that fireworks, by their incendiary nature, can injure bodies, burn property, and more.  *See, e.g.*, *Chappell v. City of Birmingham*, 181 So. 906, 907 (Ala. 1938); *Cannon v. City of Dallas*, 263 S.W.2d 288, 290, 292 (Tex. Civ. App. 1953).  The Court of Appeals has also affirmed the constitutionality of a private act that rendered even the mere possession and use of fireworks illegal in Davidson County.  *See B & B Distrib. Co. v. Metropolitan Nashville, Davidson Cnty.*, 667 S.W.2d 751, 753 (Tenn. Ct. App. 1983).

---

[19] Jefferson City, Tenn., Mun. Code § 7-402 (2004).

[20] *See Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 469 (quoting Knoxville, Tenn., Emergency Ordinance 0-119-00 (Apr. 4, 2000)).

[21] *See Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d at 469 (quoting Knoxville, Tenn., Emergency Ordinance 0-119-00 (Apr. 4, 2000)).

Because, by its own terms, Jefferson City's ordinance cannot be characterized as being tantamount to a zoning ordinance, it is not a zoning restriction under the *Cherokee Country Club* test. Since the ordinance is not a zoning ordinance under the first part of the *Cherokee Country Club* test, it is not necessary for us to apply the second part of the test and inquire into whether the ordinance substantially affects SNPCO's use of its property. Accordingly, we state no opinion regarding whether the ordinance's effect of preventing SNPCO from continuing one aspect of its business is substantial enough to warrant protection had Jefferson City's ordinance been found to be a zoning ordinance. However, it necessarily follows that because Jefferson City's ordinance is not a zoning ordinance, it is neither a "zoning change" nor a "zoning restriction" for the purpose of Tenn. Code Ann. § 13-7-208(b)(1). Therefore, SNPCO cannot take advantage of the grandfather clause in Tenn. Code Ann. § 13-7-208(b)(1).

## VI.

Because Jefferson City's ordinance banning the sale of fireworks is not a "zoning change" or "zoning restriction" under the test announced in *Cherokee Country Club, Inc. v. City of Knoxville*, SNPCO does not qualify for relief under Tenn. Code Ann. § 13-7-208(b)(1). Accordingly, we affirm the decisions of the courts below and remand the case for any further proceedings that may be required. We tax the costs of this appeal to SNPCO, Inc. and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE