FILED

05/02/2017

Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 11, 2017 Session

## METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE v. BOARD OF ZONING APPEALS OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, ET AL.

Appeal from the Chancery Court for Davidson County
No. 12-910-II      Carol L. McCoy, Chancellor

_____

### No. M2016-01732-COA-R3-CV

_____

A billboard company and the owners of the property upon which two billboards sit ("the defendants") appeal the decision of the trial court holding that the board of zoning appeals erred in issuing building permits to the defendants to allow them to replace static display billboards with digital display billboards. Because we agree with the trial court's conclusion that the ordinance at issue is a lighting regulation, not a zoning regulation, and that Tenn. Code Ann. § 13-7-208 therefore does not apply, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and JOHN W. MCCLARTY, JJ., joined.

Garrett E. Asher, Nashville, Tennessee, for the appellants, CBS Outdoor, Inc., Felix Z. Wilson II Revocable Living Trust, and Equitable Trust Company.

Lora Barkenbus Fox and Catherine J. Pham, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

In March 2012, CBS Outdoor, Inc. ("CBS") applied to the Department of Codes and Building Safety ("the Department") of the Metropolitan Government of Nashville and Davidson County ("Metro") for two building permits to replace existing static display billboards with digital display billboards. The two billboards are located on

properties owned by the Felix Z. Wilson II Revocable Trust and the Equitable Trust Company ("the Property Owners"). One of the properties is located at 2730 Locust Street and is zoned IWD (Industrial, Warehousing/Distribution). The other property is at 700 Clinton Street and is zoned CF/UZO (Commercial, Core Frame/Urban Zoning Overlay).

The Department denied the permits, and CBS appealed to the Board of Zoning Appeals ("BZA"), which voted to issue both permits. Metro filed a petition for writ of certiorari in chancery court seeking a review of the BZA orders, and the chancery court dismissed the petition for lack of standing. This Court reversed the chancery court's decision on standing, and the Supreme Court affirmed. *See Metro. Gov't of Nashville & Davidson Cnty. v. Bd. of Zoning Appeals of Nashville & Davidson Cnty.*, 477 S.W.3d 750, 753 (Tenn. 2015). The matter was then remanded to the chancery court for a ruling.

On remand, Metro argued that the BZA permits violated a Metro ordinance requiring 2,000 feet between digital billboards and a set distance between digital billboards and residential property. CBS did not dispute that the proposed digital billboards failed to comply with the Metro ordinance, but asserted that the proposed billboards qualified as a nonconforming use protected by the grandfather clause in Tenn. Code Ann. § 13-7-208. The trial court determined that the BZA "erred in issuing permits to CBS to allow conversion of its static billboards in violation of the distance requirements in the Metro Code." CBS and the Property Owners appealed.

STANDARD OF REVIEW

Review of a decision of a local board of zoning appeals is by common law writ of certiorari. *Hoover, Inc. v. Metro. Bd. of Zoning Appeals for Davidson Cnty.*, 955 S.W.2d 52, 54 (Tenn. Ct. App. 1997). A reviewing court may grant relief only when the board, exercising judicial functions, has exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990). The scope of review by the appellate courts is no broader than that of the chancery court in these cases with respect to evidence presented before the board. *Watts v. Civil Serv. Bd.*, 606 S.W.2d 274, 277 (Tenn. 1980).

In this case, the facts are not in dispute. The trial court (like the BZA) applied the Metro ordinance and pertinent statute, Tenn. Code Ann. § 13-7-208, to the facts before it. Application of a statute or ordinance to the facts presents a question of law. *Sanifill of Tenn., Inc. v. Tenn. Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995). As to issues of law, our review is de novo with no presumption of correctness. TENN. R. APP. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

ANALYSIS

The dispositive issue here is whether the grandfather clause in Tenn. Code Ann. § 13-7-208 applies. To answer this question, we must determine whether the ordinance at issue qualifies as a zoning provision or a safety provision.[1] If the ordinance is a zoning ordinance, the grandfather clause may apply; if it is a safety ordinance, the grandfather clause will not come into play. Metro argues that the ordinance contains lighting restrictions, not zoning changes.

The ordinance at issue here provided, in pertinent part, as follows:

Prohibited signs.

It is unlawful to erect, cause to be erected, maintain or cause to be maintained, any sign not expressly authorized by, or exempted from, this title. Any prohibited sign(s) may be removed by the zoning administrator or his designee after notice to the property owner or occupant to remove such sign(s) within three days. The following signs are expressly prohibited:
. . . .
G.
. . . .
2. Signs with any copy, graphics, or digital displays that change messages by electronic or mechanical means, other than tri-face billboards, shall not be permitted in the CA, CS, CF, CC, SCR, IWD, IR and IG districts unless the following distance requirements are satisfied, based upon the overall height of the sign:
a. Signs four feet or less in height shall not be less than one hundred feet from any agriculturally or residentially-zoned property.
b. Each additional foot in height, or portion thereof, above four feet shall be setback an additional twenty-five feet from any agriculturally or residentially-zoned property. For example, a sign between five and six feet in height shall not be less than one hundred fifty feet from any agriculturally or residentially-zoned property.
3. Sign display areas with varying light illumination and/or intensity, blinking, bursting, dissolving, distorting, fading, flashing, oscillating, rotating, scrolling, sequencing, shimmering, sparkling, streaming, traveling, tracing, twinkling, simulated movement, or convey the illusion of movement.

---

[1] CBS also asserts that Metro waived its argument that the ordinance is a lighting provision because it did not raise the issue before the BZA. We decline to consider this issue in light of the fact that CBS did not raise it at the trial level. *See Joyce v. Collins*, No. E2005-01177-COA-R3-CV, 2006 WL 359757, at *6 (Tenn. Ct. App. Feb. 16, 2006) (stating that issue "cannot be raised for the first time on appeal").

4. Free-standing and wall-mounted digital display billboards, including the conversion of existing billboards to digital billboards, less than two thousand feet apart. The spacing distance shall be measured along the roadway that the billboard is located and shall be measured from billboard to billboard regardless of the side of the roadway on which the billboard is located, the billboard's orientation on the roadway or the public street classification.

Metro Code § 17.32.050. Subsections (2) and (4) of Metro Code § 17.32.050.G.2. ("the Ordinance") contain the restrictions at issue in this case. CBS acknowledges that its proposed billboards do not comply with these distance requirements.

CBS takes the position that the Ordinance is a zoning ordinance subject to the protections of the grandfather clause of Tenn. Code Ann. § 13-7-208.[2] A grandfather

---

[2] The version of Tenn. Code Ann. § 13-7-208 in effect in 2012 provided, in pertinent part:

(b)(1) In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.
(2) When the use permitted to continue to expand, or to be rebuilt pursuant to any subsection of this section is an off-premises sign, such use shall not preclude any new or additional conforming use or structure on the property on which the sign structure is located or on any adjacent property under the same ownership; provided, however, that any such new or additional use or structure does not result in any violations of the applicable zoning restrictions other than those nonconformities associated with the off-premises sign as allowed under this subdivision (b)(2).
(c) Industrial, commercial or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto in effect immediately preceding a change in zoning shall be allowed to expand operations and construct additional facilities which involve an actual continuance and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners. No building permit or like permission for construction or landscaping shall be denied to an industry or business seeking to expand and continue activities conducted by that industry or business which were permitted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners.

clause is "[a] provision that creates an exemption from the law's effect for something that existed before the law's effective date." BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Smith Cnty. Reg'l Planning Comm'n v. Hiwassee Vill. Mobile Home Park, LLC*, 304 S.W.3d 302, 310 (Tenn. 2010). A grandfather clause must be construed strictly against the party who seeks its protection. *Hiwassee Vill.*, 304 S.W.3d at 310; *Outdoor W. of Tenn., Inc. v. City of Johnson City*, 39 S.W.3d 131, 135 (Tenn. Ct. App. 2000). Thus, in this case, CBS had the burden of proving that its signs constituted a pre-existing nonconforming use that qualified for the protection of Tenn. Code Ann. § 13-7-208. *See Outdoor W.*, 39 S.W.3d at 135.

To invoke the protections of Tenn. Code Ann. § 13-7-208, a plaintiff must make two threshold showings, the first of which is as follows: "that there has been a change in zoning (either adoption of zoning where none existed previously, or an alteration in zoning restrictions)."[3] *Id.* (citing *Rives v. City of Clarksville*, 618 S.W.2d 502, 505 (Tenn. Ct. App. 1981)). Thus, the proposed ordinance must be a zoning measure for Tenn. Code Ann. § 13-7-208 to apply.

There are two key Supreme Court cases that have addressed whether an ordinance is a zoning ordinance. In *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 473 (Tenn. 2004), our Supreme Court adopted a "substantial effect" test: "we believe that the determination of whether a regulation or an ordinance 'substantially affects' the property owners' use of land is a well-reasoned and persuasive approach." Using this test, the Court determined that an ordinance prohibiting the issuance of demolition permits for property being considered for designation as part of an historical overlay district was a zoning ordinance because "the broad and permanent restrictions in this ordinance substantially affected [the property owner's] use of its property and the manner in which [the property owner] could effectuate any uses that remained permissible." *Cherokee*, 152 S.W.3d at 474.

The other important Supreme Court case on the "substantial effect" test is *SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467 (Tenn. 2012). That case presented the issue of whether an ordinance banning the sale of fireworks within the city limits was a zoning ordinance entitled to the protections of Tenn. Code Ann. § 13-7-208 or a regulation enacted pursuant to the city's police powers. *SNPCO*, 363 S.W.3d at 470. The court refined the "substantial effect" analysis:

> [The "substantial effects" test] is actually a two-part test that examines both the terms and the effects of the challenged ordinance. The first step requires courts to review the terms of the challenged ordinance and the

---

[3] The second required showing is "that the use to which they put their land was permitted prior to the zoning change." *Outdoor W.*, 39 S.W.3d at 135 (citing *Rives*, 618 S.W.2d at 505). This requirement is not at issue in the present case.

municipality's comprehensive zoning plan to determine whether the ordinance is so closely related to the zoning plan that it can be fairly characterized as tantamount to zoning. The second step requires the courts to determine whether the challenged ordinance substantially affects the use of the property that is the subject of the litigation. Both parts of the test must be satisfied before a challenged ordinance may be held to be tantamount to zoning.

*Id.* at 478. Applying this test to the facts at hand, the Court in *SNPCA* noted that the ordinance "[did] not refer to nor [did] its operation depend upon the City's zoning plan." *Id.* The ordinance did not "refer to land, zones, buildings, lot lines, or any other terms and concepts customarily associated with comprehensive zoning plans." *Id.* The Court concluded that the ordinance "reflects the exercise of the City's traditional, general police power granted in Tenn. Code Ann. § 6-2-201(22)" and "falls squarely within the general police powers traditionally exercised by government." *Id.* at 478-79. Because it determined that the ordinance was not "tantamount to a zoning ordinance," the Court did not apply the second part of the "substantial effect" test. *Id.* at 479.

In arguing that the Ordinance contains non-zoning lighting restrictions, Metro relies upon *Metropolitan Government of Nashville & Davidson County v. Board of Zoning Appeals of Nashville & Davidson County*, No. M2013-00970-COA-R3-CV, 2014 WL 5147757 (Tenn. Ct. App. Oct. 13, 2014) ("*Lamar*"). In the *Lamar* case, Lamar Tennessee, LLC ("Lamar"), owned a standard billboard in an area that was rezoned in 2001 from CS (Commercial Service) to MUL (Mixed Use Limited), which meant that billboards were no longer permitted in the area. Lamar's billboard was protected by the grandfather clause in Tenn. Code Ann. § 13-7-208. *Metro. Gov't*, 2014 WL 5147757, at *1. In 2008, lighting amendments to the Metro Code prohibited LED message boards and digital display signs in MUL districts. *Id.* A few years later, Lamar applied for a permit to replace its standard billboard with a digital billboard. *Id.* The BZA ultimately found that Lamar should be granted a permit, and Metro filed a petition for writ of certiorari to the chancery court, which reversed the decision of the BZA. *Id.*

On appeal, this Court conducted a thorough analysis to determine whether the ordinance at issue, Metro Code § 17.32.050.H.2, was a zoning regulation or a non-zoning safety restriction. *Id.* at *3-7. Because the ordinance at issue in the *Lamar* case appears in the same title, chapter, and part of the Metro Code as the Ordinance, the Court's analysis is relevant in the present case:

Title 17 of the Metropolitan Code of Ordinances contains Metro's zoning code. Code § 17.04.010B states the purpose of the code:

Purpose and Authority. This zoning code is enacted pursuant to Articles 2 and 20 of the Charter of the Metropolitan Government of

- 6 -

Nashville and Davidson County and Title 13 of the Tennessee Code Annotated. This title is designed to implement the goals and objectives of Concept 2010: A General Plan for Nashville and Davidson County and its associated subarea and functional plans. Created by this title are a diverse range of zoning districts which establish appropriate land uses and associated standards of development needed to implement the land use policies of the General Plan. In conjunction with this title an official zoning map assigns an appropriate zoning classification to all properties to which this title is applicable. . . . This title further establishes development standards which are designed to protect the value and integrity of neighboring properties, enhance the general character and appearance of the community, reinforce the central business district, and provide for a reasonable balance between efficient utilization of land, protection of this community's environmental resources and assuring the operational integrity of streets. . . .

(Ord. 96-555 § 1.1, 1997).

Zoning districts are established at Code § 17.08.010 and include agricultural, residential, specific plan, mixed use, office, commercial, downtown code, shopping center, and industrial districts; the nature and character of each district is described at § 17.08.020.

Chapter 17.32 of the Code is entitled "Sign Regulations"; the purpose and intent of this chapter is set forth at § 17.32.010 and, with specific reference to safety, states:

Safety. Construct and display signs in a manner that allows pedestrians and motorists to identify, interpret and respond in an efficient and discerning manner to the following:

1. Information related to public traffic control, directions and conditions;
2. Movement of all other pedestrians and vehicles that impact traffic on a given travelway; and
3. Information other than public traffic related when displayed in a manner which is clear, concise and noncompeting with public traffic information.

Metropolitan Code § 17.32.010A. Metropolitan Code § 17.32.020A provides that the sign regulations "are intended to complement the various codes and ordinances of the metropolitan government" and that

"[w]henever there is inconsistency between these sign regulations and other regulations of the metropolitan government, the more stringent shall apply."

Metropolitan Code § 17.32.030, entitled "Rationale, definition, system for regulation and overall use," provides in pertinent part:

C. System for Regulation. Regulation of signs is based on size, location, method of attachment, duration and design/lighting. The following distinctions apply to the regulation of signs:
1. Regulations based on size;
2. Regulation based on location;
3. Regulation based on method of attachment:
   a. On-premises ground sign,
   b. On-premises building sign;
4. Regulation based on duration:
   a. On-premises temporary sign,
   b. On-premises permanent sign;
5. Regulation based on design/method of lighting:
   a. Illluminated sign,
   b. Nonilluminated sign.

Regulations apply to signs with respect to specific permissiveness and provisions in each use district or group of related districts. Regulations are generally more restrictive in residential districts than in commercial districts.

*Id.* at *5-6 (footnotes omitted).

Having described the relevant zoning plan, the *Lamar* court proceeded to consider whether the ordinance prohibiting LED message boards and digital display signs was a zoning ordinance. The court stated:

[I]t is apparent that the signage regulation and related lighting provisions contained in Chapter 17.32 are of a character and purpose different than that reflected in the statement of purpose of the zoning code; they do not reflect the land use policy considerations and objectives inherent in the development of the comprehensive zoning code. *See* Code § 17.04.010B. While allowing, prohibiting, or otherwise regulating particular signs in specified districts is a component of the overall zoning ordinance, Chapter 17.32 does not "depend[] entirely upon the zoning districts established by the Metropolitan Zoning Ordinance[,"] as argued by Lamar. Rather, Chapter 17.32 functions primarily to complement the uses of property as

reflected in the zoning districts established at Code § 17.08.010. More importantly, the signage regulations are reflective of the city's powers and responsibilities to provide for the public safety. By their nature specific signage regulations may be appropriate in residential zones, different regulations in commercial zones, and different regulations in industrial zones; the regulations, however, do not impair the use of the property upon which the sign is located. The regulations operate as a means to accomplish specific objectives in the zoning code, and are not "tantamount to zoning."

We are also of the opinion that § 17.32.050H2 does not substantially affect Lamar's use of the billboard. In its brief Lamar argues that "the off-premises sign industry is tremendously competitive and dependent upon technological innovation" and that incorporation of technological improvements "is critically important [to] maintaining and reasonably increasing viewership of the signs." The question before us, however, is whether the ordinance "substantially affects the use of the property," not whether the ordinance prevents Lamar from maximizing viewership of the signs. Lamar has maintained a standard billboard on the property since 2000, with the use grandfathered in when the zoning was changed from CS to MUL in 2006. Code § 17.32.050H2 was passed in 2008 and Lamar did not apply to replace the existing billboard to a digital one until 2011. Lamar is still able to use the billboard in the MUL zone as it was originally constructed and to utilize digital billboards in other zones where allowed.

*Id.* at *6 (footnote omitted). Based upon this reasoning, the *Lamar* court concluded that the ordinance was not a zoning regulation and that the grandfather clause set forth in Tenn. Code Ann. § 13-7-208, therefore, did not apply. *Id.* at *7.

We find the reasoning in the *Lamar* case to be equally applicable to the present case. The Ordinance, Metro Code § 17.32.050.G, does not allow digital signs in certain districts based on the height of the signs and their distance from other signs and from residential property. The Ordinance appears in the same chapter of the Metro Code as the ordinance at issue in *Lamar*. As the court stated in *Lamar*, "Chapter 17.32 functions primarily to complement the uses of property as reflected in the zoning districts established at Code § 17.08.010," and "the signage regulations are reflective of the city's powers and responsibilities to provide for the public safety." *Id.* at *6. Thus, we find that the Ordinance is not tantamount to zoning and should be considered a lighting regulation, not a zoning regulation.[4]

---

[4] CBS cites Metro Code § 17.32.150.B.16, an ordinance regulating brightness and surface illumination, as well as hours of illumination, and argues that Metro Code § 17.32.050.G cannot be considered a lighting regulation because Metro has "already included a specific lighting restriction to apply to digital signs in

CBS cites *B.F. Nashville, Inc. v. City of Franklin*, No. M2003-00180-COA-R3-CV, 2005 WL 127082 (Tenn. Ct. App. Jan. 21, 2005), for the proposition that "when a sign ordinance addresses size and distance, that ordinance is a 'zoning restriction' and subject to the protections of the grandfather statute." We disagree with this reading of the *B.F. Nashville* case. B.F. Nashville, Inc. ("B.F.") owned a Wendy's restaurant with a large free-standing sign. *B.F. Nashville*, 2005 WL 127082, at *1. After the city passed a sign ordinance in 1995, the sign would have been prohibited without the protections of Tenn. Code Ann. § 13-7-208. *Id.* In 1999, the Wendy's sign was damaged in a storm; several years later, B.F. decided to build a replacement sign in compliance with the new wind resistance requirements. *Id.* The city sign codes administrator informed B.F. by letter that, because the proposed sign did not comply with the city's sign ordinance, its reconstruction would not be allowed. *Id.* B.F. filed an action for declaratory judgment that it had "a statutory right to reconstruct the subject sign regardless of the provisions of the Franklin Zoning Ordinance." *Id.* The chancery court granted the city's motion to dismiss without providing any statement of reasons. *Id.* at *2.

B.F.'s proposed sign did not conform to a provision of the city's sign ordinance limiting signs "located within 1,500 feet of the interstate to a height of 20 feet and that allow only one freestanding sign per lot." *Id.* at *3. (The code administrator's letter also referenced a section of the zoning ordinance regarding abandonment of a sign. *Id.*) Applying the "substantial effect" test, the court determined that "an ordinance regulating the number, location, and size of advertising signs on property used for commercial purposes does substantially affect the property owner's use of the property." *Id.* at *13. The court, therefore, held that the city's sign ordinance was a zoning regulation and subject to the grandfather clause in Tenn. Code Ann. § 13-7-208. *Id.*

The *B.F.* court's analysis did not end there. Because B.F. intended to replace a sign that had been "largely demolished," the court determined that its reconstruction was covered by Tenn. Code Ann. § 13-7-208(d), which allows a business in operation prior to a zoning change "to destroy present facilities and reconstruct new facilities necessary to the conduct of such industry or business subsequent to the zoning change." *Id.* at *15; Tenn. Code Ann. § 13-7-208(d). B.F. did not allege in its complaint that reconstruction of the sign was necessary to the conduct of its business. *Id.* at *17. The court held: "Although the protections of Tenn. Code Ann. § 13-7-208(d) apply generally to on-site signs, B.F. was not entitled to a declaratory judgment that the statute gave it the right to reconstruct its sign without regard to ordinances limiting nonconforming signs." *Id.* at *20.

---

the zoning code." We reject this reasoning. The two ordinances regulate different issues, with Metro Code § 17.32.050.G addressing the height and spacing of digital signs and Metro Code § 17.32.150.B.16 addressing the brightness of illuminated signs. Metro Code § 17.32.050.G.5 specifically provides that "any digital billboards not in compliance with the applicable provisions of Section 17.32.150 are also prohibited."

As the trial court in the present case noted, the following language from the *B.F. Nashville* case "clarifies that the landowner is not totally grandfathered from all local regulation regarding the reconstruction of a billboard":

> *While a complete prohibition on the reconstruction of the sign could arguably contravene Tenn. Code Ann. § 13-7-208(d), merely requiring that the reconstructed sign, or any other structure, comply with certain kinds of requirements, e.g., building, safety, etc., would not necessarily conflict with the statute.* Hunter [*v. Metro. Bd. of Zoning Appeals*, No. M2002-00752-COA-R3-CV, 2004 WL 315060, at *4-5 (Tenn. Ct. App. Feb. 17, 2004)] (holding that reconstructed building must comply with current landscape buffer requirements). The General Assembly has clarified this issue by a recent amendment to Tenn. Code Ann. § 13-7-208 that added a new subsection (i) that provides:
>
>> Notwithstanding the provisions of subsection (d), any structure rebuilt on the site must conform to the provisions of the existing zoning regulations as to setbacks, height, bulk, or requirements as to the physical location of a structure upon the site, provided that this subsection shall not apply to off-site signs.
>
> 2004 TENN. PUB. ACTS, ch. 775.
>
> This amendment became effective after B.F. brought this action and cannot be applied to resolve the issues in this appeal. Nonetheless, it makes clear that *the legislature did not intend that Tenn. Code Ann. § 13-7-208(d) give landowners with non-conforming uses immunity from all local regulation of reconstructed structures.*

*B.F. Nashville*, 2005 WL 127082, at *16 (emphasis added).

We find the court's language in *B.F. Nashville* to be consistent with the result in the *Lamar* case, which is on point with the present case. The Ordinance is a lighting restriction, not a zoning restriction and, therefore, is not covered by the grandfather clause in Tenn. Code Ann. § 13-7-208.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants. Execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

- 11 -