IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 12, 2017 Session

## ESTATE OF ELLA MAE HAIRE, ET AL. v. SHELBY J. WEBSTER, ET AL.

Appeal from the Chancery Court for Knox County
No. 191583-2     Clarence E. Pridemore, Jr., Chancellor

_____

No. E2017-00066-COA-R3-CV
_____

This appeal arises from a family dispute over joint bank accounts.  Phillip Daniel Haire ("Danny Haire") sued First Tennessee Bank National Association ("the Bank") in the Chancery Court for Knox County ("the Trial Court") alleging, among other things, breach of contract.  The Bank had allowed Danny Haire's late mother Ella Mae Haire ("Decedent") to remove him unilaterally as joint tenant with right of survivorship from certain accounts.  The Bank filed a motion to dismiss, which the Trial Court granted. Danny Haire appealed.  We hold, *inter alia,* that Danny Haire's complaint failed to identify which contract term the Bank allegedly breached, and that Decedent could have removed all of the funds from the account, thus effectuating the same practical result as that which actually occurred.  We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and THOMAS R. FRIERSON, II, JJ., joined.

Robin M. McNabb, Knoxville, Tennessee, for the appellants, Phillip Daniel Haire, individually and as personal representative of the Estate of Ella Mae Haire.

J. Michael Winchester and E. Brian Sellers, Knoxville, Tennessee, for the appellee, First Tennessee Bank National Association.

# OPINION

## Background

This appeal involves a family dispute over Decedent's bank accounts. Danny Haire, Decedent's son, is the personal representative of Decedent's estate. According to Danny Haire, the Bank wrongly allowed his siblings to alter for their benefit pay-on-death beneficiaries and survivorship status on Decedent's checking and savings account with the Bank.

Decedent's husband died in 2008, and Decedent became the sole owner of the property she had held jointly with her husband. Joyce Heath, Danny Haire, Shelby Webster, and David Haire are surviving children of the deceased. Danny Haire took care of his widowed elderly mother. Decedent added Danny Haire as a joint tenant with right of survivorship to her checking and savings accounts with the Bank. Danny Haire also served as Decedent's attorney-in-fact for financial matters from August 2005 through October 2012.

In 2012, a family disagreement arose. Consequently, Danny Haire's siblings David Haire and Shelby Webster assumed management of Decedent's affairs. In October 2012, Decedent executed a new durable power of attorney designating David Haire as her attorney-in-fact. Signature cards executed in 2012 purportedly removed Danny Haire as joint tenant with right of survivorship from the accounts he shared with Decedent. In November 2013, Decedent died. Upon Decedent's death, the funds in Decedent's checking account, around $11,500, were paid to David Haire and Shelby Webster, and the funds in the savings account, around $129,000, were paid to Shelby Webster alone. Danny Haire never received any funds.

In May 2016, Danny Haire filed suit, individually, and as personal representative of Decedent's estate, against the Bank and a number of family members. This appeal, however, concerns only the Bank. Danny Haire's original complaint alleged breach of contract and conversion. In July 2016, the Bank filed a motion to dismiss for failure to state a claim upon which relief can be granted. In October 2016, Danny Haire filed a motion to amend his complaint, this time dropping the conversion claim and adding negligence and breach of bailment contract claims. The Bank did not oppose the amended complaint, but the Trial Court did not enter an order allowing the amended complaint until some months later in March 2017. Danny Haire's amended complaint stated, in part, as follows:

> 57. Beginning in June of 2012, David Haire and Shelby Webster, through various signature cards, changed the account owners, authorized

-2-

account signatories, and pay-on-death beneficiaries for Decedent's Checking Account and Savings Account. (collectively the "Accounts") for the benefit of David Haire and Shelby Webster.

58. Although some of the signature cards might have been signed by Decedent, Decedent was either incompetent or under the undue influence of David Haire and Shelby Webster at the time the signature cards were executed and presented to First Tennessee Bank.

59. A copy of the void or voidable signature cards for the Checking Account are attached hereto and incorporated herein as <u>Collective Exhibit F.</u>

60. A copy of the void or voidable signature cards for the Savings Account are attached hereto and incorporated herein as <u>Collective Exhibit G.</u>

61. Upon information and belief, David Haire and/or Shelby Webster (collectively, the "Fiduciaries") also forged the signature of account co-owner Danny Haire on some of the signature cards.

62. In particular, upon information and belief, the Fiduciaries forged Danny Haire's signatures on the Checking Account signature card dated June 7, 2012, and the Savings Account signature card dated June 7, 2012, which resulted in Danny Haire being removed as a co-owner from both accounts.

63. The Fiduciaries made these changes without Danny Haire's knowledge or permission.

64. Danny Haire did not sign any of the signature cards at issue personally.

65. The Fiduciaries also changed the addresses for the accounts from Decedent's address to David Haire's address.

66. At all times relevant to this action, including the dates on which the signature cards were purportedly signed by Decedent and/or the Fiduciaries, Decedent lacked the legal capacity to execute or understand the nature of those documents.

67. The end result of the wrongful acts of the Fiduciaries was that the balance of the Checking Account (approximately $11,500.00) was paid to David Haire and Shelby Webster upon Decedent's death, and the balance of the Savings Account (approximately $129,000.00) was paid to Shelby Webster upon Decedent's death.

68. No funds were paid to Danny Haire, who was a co-owner on both accounts in early 2012 prior to the Fiduciaries' interference.

69. Danny Haire did not become aware of the changes until some time after Decedent's death, when he expected that he would have been

contacted by First Tennessee Bank as the surviving co-owner of the Checking Account and Savings Account.

70. The changes made by the Fiduciaries through those signature cards from and after June 2012 are void or voidable due to Decedent's lack of capacity or undue influence.

71. The signature cards dated June 7, 2012, are also void or voidable due to the forged signature of Danny Haire.

72. The Court should impose a constructive trust upon the assets of the Accounts for the benefit of Decedent's Estate and/or Danny Haire personally (as co-owner of the accounts).

73. To the extent that the Account funds are not traceable or recoverable, the Plaintiffs request a judgment for money damages for the benefit of Decedent's Estate and/or Danny Haire personally (as co-owners of the Accounts), plus prejudgment interest.

## Count Ill: Breach of Contract by First Tennessee Bank for Changing Ownership of Jointly Titled Bank Accounts

74. Paragraphs 1 through 73 of this Complaint are incorporated herein as if set forth verbatim.

75. Danny Haire had signed many signature cards for First Tennessee Bank prior to 2012, including signature cards for several certificates of deposit and bank accounts owned jointly with Decedent.

76. First Tennessee Bank knew or should have known that the signature of Danny Haire on the June 7, 2012, signature cards had been forged.

77. First Tennessee Bank breached its contract with Decedent and Danny Haire by removing Danny Haire as a co-owner of the Savings Account and Checking Account without the valid signature or express authorization of Danny Haire.

78. First Tennessee Bank deprived Danny Haire of co-ownership and the use of funds in the accounts by accepting the forged signature on the signature cards and removing Danny Haire as a co-owner of the Savings Account and Checking Account.

79. The actions of First Tennessee Bank constitute a breach of contract, for which Plaintiffs are entitled to damages.

## Count IV: Action for Damages for Negligence by First Tennessee Bank for Changing Ownership of Jointly Titled Bank Accounts

80. Paragraphs 1 through 79 of this Complaint are incorporated herein as if set forth verbatim.

81. First Tennessee Bank owed Danny Haire a duty of care as a co-owner of the Savings Account and Checking Account.

82. First Tennessee Bank breached that duty of care by accepting the forged signature on the signature cards and removing Danny Haire as a co-owner of the Savings Account and Checking Account.

83. Danny Haire suffered damages as a result of First Tennessee Bank's actions.

84. The actions of First Tennessee Bank constitute negligence, for which Plaintiffs are entitled to damages.

## Count V: Breach of Bailment Contract by First Tennessee Bank for Changing Ownership of Jointly Titled Bank Accounts

85. Paragraphs 1 through 84 of this Complaint are incorporated herein as if set forth verbatim.

86. The funds were delivered to First Tennessee for deposit into the Savings Account and Checking Account co-owned by Danny Haire, the purpose of use by Ella Mae Haire during her life.

87. Upon the death of Ella Mae Haire, First Tennessee, under the terms of the joint accounts, was to deliver the funds to Danny Haire, as a co-owner, or retain the funds until he claimed them.

88. Upon the death of the Decedent, First Tennessee Bank failed to deliver the funds in the Savings Account and Checking Account to Danny Haire[.]

89. Plaintiffs are entitled to damages from First Tennessee Bank for breach of the bailment contract between First Tennessee Bank and Danny Haire.

The Bank, in a brief incorporated by reference into its motion to dismiss, articulated grounds for dismissal as follows, in part:

22. Other than Plaintiffs' conclusory allegations and speculation that the Decedent was incompetent, there is no allegation or assertion in the Complaint of any conservatorship or adjudication of incompetence relating to the Decedent. Under relevant Tennessee law, a bank's authority to accept, pay, or collect items on accounts is not rendered ineffective by incompetence of a customer unless the bank has actual knowledge of an adjudication of incompetence. See TCA § 47-4-405. Since there is no allegation that the Decedent was adjudicated incompetent, and no allegation

-5-

that the Bank was on notice of such adjudication in any event, the Bank's actions in regard to the Accounts are effective and enforceable pursuant to TCA § 47-4-405 regardless of any alleged incompetence of the Decedent.

***

26. Under the facts as alleged in the Complaint, the Bank was entitled to recognize the authority under the Power of Attorney until the Bank received written notice of an adjudication of incompetency or revocation of the Power of Attorney. Neither event is alleged to have occurred. Accordingly, TCA § 45-2-707(d) declares that no bank shall be liable for damages, penalty, or tax by reason of any payment made or property withdrawn under a power of attorney consistent with this section.

27. There are no allegations that the Bank participated in any fraudulent signatures or forgeries of any signature cards, although those allegations are asserted against the Fiduciaries [*see* Complaint, ¶¶ 61 and 64]. However, close examination of the signature cards contained in Collective Exhibit F and Collective Exhibit G to the Complaint do not contain any signatures of Danny Haire, but instead reflect that he is designated as a "POD." In any event, there is no allegation that the Bank participated or was aware of any alleged forgeries on any signature cards or on any checks or withdrawal slips presented on either the Checking Account or Savings Account prior to withdrawal of all funds in such Accounts [*see* Complaint, ¶ 67].

28. Since the Complaint clearly asserts and alleges that all funds have been depleted from the Accounts, there are no accounts now available at the Bank to reestablish under a **constructive trust theory** or otherwise, and certainly no basis to assert such rights against the Bank since it was authorized to recognize the activity pursuant to the Power of Attorney or withdrawals authorized by the Decedent as owner of the Account [*see* TCA §§ 45-2-703 and 47-4-405].

***

31. Under Count III of the Complaint, the Plaintiffs attempt to assert and allege that the Bank breached its contract with Decedent and Danny Haire by removing Danny Haire as a co-owner on the Savings Account and Checking Account without valid signatures of Danny Haire [*see* Complaint, ¶ 77]. As stated above, the Plaintiffs have presented no contract forms or alleged any contract provisions that would prevent Danny Haire from being removed as a co-owner on said Accounts, but have simply asserted legal

-6-

conclusions that do not establish claims under statutory or common law in the state of Tennessee as against the Bank. Pursuant to TCA § 45-2-703, the Bank could deal with either one of two joint tenants or co-owners of a deposit account and may pay either, and no contract terms to the contrary have been identified or presented by Plaintiffs.

32. Further, pursuant to the terms of the Power of Attorney attached as Exhibit C to the Complaint, the Decedent specifically authorized her Attorney-in-Fact to receive and disburse funds through savings, checking, or other accounts at any financial institution, whether such accounts were solely in her name or joint with others [*see* Complaint, Exhibit C, p. 2, § II, ¶ A].

33. The Decedent also specifically authorized her Attorney-in-Fact to "change, add, or delete any right of survivorship designation of any of my property to which I hold title either alone or with others" [*see* Complaint, Exhibit C, pp. 3-4, § II, ¶ K]. The Bank is specifically authorized to recognize a Power of Attorney pursuant to TCA § 45-2-707, and cannot be held liable for any damages of any payments made or property withdrawn as a result thereof. Accordingly, these allegations and assertions by the Plaintiffs do not establish a valid breach of contract claim, and the Bank cannot be held liable for any payments made or property withdrawn pursuant to the terms of the Power of Attorney, and all such claims should be dismissed for failure to state claims upon which relief can be granted pursuant to TRCP 12.02(6).

In December 2016, following an October 2016 hearing, the Trial Court entered an order granting the Bank's motion to dismiss, stating in part:

ORDERED, ADJUDGED, AND DECREED as follows:

1. That the Motion to Dismiss filed by the Defendant, First Tennessee Bank National Association, is hereby GRANTED pursuant to TRCP 12.02(6) and the Complaint filed in this case by the Plaintiffs, as amended, as to all claims or causes of action asserted therein against the Bank, are hereby DISMISSED WITH PREJUDICE for the reasons presented and stated at the hearing on said Motion, including oral argument, and the authorities set forth in the supporting Brief filed by the Bank, all such matters being incorporated herein by reference;

2. That pursuant to TCA §20-12-119(c), the assessment of reasonable and necessary litigation costs, including court costs and reasonable attorney's fees of the Bank, is hereby STAYED until the Court has been notified that a final decision which is not subject to appeal has been rendered in this matter related to the Motion to Dismiss;

3. That, notwithstanding the Stay, the Court hereby directs entry of this Order as a Final Judgment of Dismissal with Prejudice as to all of the claims asserted against the Bank by the Plaintiffs in their Complaint, as amended, and expressly determines there is no just reason for delay and does hereby expressly direct that entry of judgment in favor of the Bank pursuant to TRCP 54.02 is appropriate; and

4. That following the dissolution of the Stay herein imposed, and after allowing legal counsel for the Bank a reasonable time to prepare and submit an affidavit or other appropriate documentation to support the litigation costs, including court costs and reasonable attorney's fees, incurred by the Bank in this matter, the Court will hold a hearing after reasonable notice on assessment of reasonable and necessary litigation costs, including attorney's fees and court costs, as provided by TCA §20-12-119(c), all such matters being RESERVED at this time.

In its oral remarks at the conclusion of the hearing on the Bank's motion to dismiss, the Trial Court stated in regard to its rationale for its decision:

THE COURT: In looking at the complaint on its face, concerning the allegations against First Tennessee Bank, I think that lacks clarity and specifics. And, also, most of these allegations against the bank are conclusory and speculation and, therefore, I'm going to grant Mr. Winchester's motion as to First Tennessee Bank.

As far as sanctions and attorney's fees, I'm going to reserve that for a later date when we finalize this matter for trial.

In January 2017, Danny Haire filed a notice of appeal. In March 2017, the Trial Court entered an order allowing Danny Haire to file his amended complaint.

## Discussion

Although not stated exactly as such, Danny Haire raises one issue on appeal: whether the Trial Court erred in granting the Bank's motion to dismiss.

With regard to the standard of review for motions to dismiss for failure to state a claim for which relief may be granted, our Supreme Court has instructed:

A motion to dismiss a complaint for failure to state a claim for which relief may be granted tests the legal sufficiency of the plaintiff's complaint. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011); *cf. Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 406 (Tenn. 2002).

-8-

The motion requires the court to review the complaint alone. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 700 (Tenn. 2009). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011), or when the complaint is totally lacking in clarity and specificity, *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992) (citing *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986)).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010); *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700. Accordingly, in reviewing a trial court's dismissal of a complaint under Tenn. R. Civ. P. 12.02(6), we must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 894; *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d at 426; Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 5-6(g), at 5-111 (3d ed. 2009). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo without a presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d at 895; *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d at 700.

*SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467, 472 (Tenn. 2012).

Danny Haire argues that the Bank's motion to dismiss was fatally defective because it did not "state with particularity" pursuant to Tenn. R. Civ. P. 7.02 grounds for the motion. Instead, the Bank's motion to dismiss incorporated by reference a separately filed brief in which grounds were articulated. This Court, in addressing a similar scenario in another case, declined to reverse on the insufficiency of a motion to dismiss, stating: "[I]n this instance Franklin's Memorandum of Law in Support of Defendant's Motion to Dismiss has been included in the record for our review. However, we want to reiterate that a motion to dismiss must state the grounds for dismissal in the motion itself and not just in an accompanying memorandum of law." *Shomo v. City of Franklin*, No. M2006-00319-COA-R3-CV, 2008 WL 490646, at *5 (Tenn. Ct. App. Feb. 22, 2008), *Rule 11 appl. perm. appeal denied Oct. 6, 2008*.

Likewise, in the present case, the brief supporting the Bank's motion to dismiss is contained in the record for our review. Additionally, the Bank's motion incorporated by reference the brief. While not the best or safest method for a movant to rely on, we find

it sufficient here. There is no evidence that Danny Haire was prejudiced in any way by the Bank's use of a brief, incorporated by reference in the motion, to articulate grounds for its motion to dismiss. We therefore decline to reverse on the basis of the Bank's arguable failure to comply with Tenn. R. Civ. P. 7.02. However, as in *Shomo*, we caution that a motion to dismiss must state its grounds for dismissal in the motion itself, and failure to do so risks reversal.

Danny Haire's amended complaint raised claims of breach of contract, negligence, and breach of bailment contract. Breach of contract is at the center of Danny Haire's arguments on appeal. Specifically, Danny Haire contends that the Bank wrongly allowed his siblings to tamper with Decedent's bank accounts and Danny Haire's status as a joint tenant with right of survivorship. In response, the Bank submits that, in allowing Decedent or her new attorney-in-fact to make modifications to her accounts, it simply did what it was asked to do by an account holder.

At the time Danny Haire was added as a joint tenant to Decedent's bank accounts, the statute concerning multi-party accounts stated:

(a) When a deposit has been made or is hereafter made, in any bank, in the names of two (2) or more persons, payable to either, or survivor, the deposit, or any part of the deposit, or any interest or dividend on the deposit, may be paid to either person, whether the others are living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. Any balance so created, including, but not limited to, any balance held by spouses, shall be subject to assignment by, or the claim of any creditor of, either depositor, as if the depositor were the sole owner of the funds; provided, that if the creditor realizes its claim by any means other than enforcement of an assignment, pledge, or the grant of a security interest made by any one (1) of the depositors, any other depositor not indebted to the creditor may, by commencing a separate action against the creditor, establish the rights that the depositor may have in the funds.

(b) A bank paying a survivor in accordance with subsection (a) is not liable for any estate, inheritance or succession tax due this state.

(c) As used in subsections (c)-(f), "multiple-party deposit account" means a deposit account, including a certificate of deposit, established in the names of, payable to, or in form subject to withdrawal by two (2) or more natural persons, or any of them, including, but not limited to, an account of the type described in subsection (a).

(d)(1) When opening a multiple-party deposit account, or amending an existing deposit account so as to create a multiple-party deposit account, each bank shall utilize account documents that enable the depositor to designate ownership interest therein in terms substantially similar to the following:

(A) Joint tenants with right of survivorship;

(B) Additional authorized signatory; and

(C) Other deposit designations that may be acceptable to the bank.

(2) Account documents that enable the depositor to indicate the depositor's intent of the ownership interest in any multiple-party deposit account may include any of the following:

(A) The signature card;

(B) The deposit agreement;

(C) A certificate of deposit;

(D) A document confirming purchase of a certificate of deposit; or

(E) Other documents provided by the bank or deposit institution that indicate the intent of the depositor.

(e) Accounts described in subsection (c) shall establish the following interests:

(1) A designation of joint tenants with right of survivorship, or substantially similar language, shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor;

(2) The designation of a person as an additional authorized signatory, or substantially similar language, shall be conclusive evidence in any action or proceeding that the person so designated has power of attorney with respect to the account and is not an owner of the account;

(3) Other designations acceptable to the bank shall establish interests in accordance with their respective provisions; and

(4) In the absence of any specific designation in accordance with subsection (d), property held under the title, tenancy by the entireties, carries a right of survivorship; property held under the title, joint tenancy, carries no right of survivorship unless a contrary intention is expressly stated. Any other person to whose order the accounts or certificate of deposit is subject shall be presumed to have power of attorney with respect to the account or certificate of deposit and not to be an owner of the account or certificate of deposit. The presumptions may be rebutted by clear and convincing evidence presented in the course of legal or equitable proceedings. Final judicial determinations contrary to the presumptions shall not affect a bank's earlier payment in accordance therewith, or the limitations on liability conferred by § 45-2-707(a) and (b).

(f) Without incurring any liability, any bank may, but shall not be required to, provide to depositors disclosures in form similar to the following:

(1) JOINT TENANTS WITH RIGHT OF SURVIVORSHIP. This designation means that the deposit account or certificate of deposit shall become the property of each owner as joint tenants, and that the survivor is entitled to all moneys in the account or represented by the certificate even if the first person to die had a will specifically directing disposition to someone else. The bank may release all moneys in the account or represented by the certificate to, or honor checks or orders drawn by, or withdrawal requests from, the survivor upon the death of any joint tenant; and

(2) ADDITIONAL AUTHORIZED SIGNATORY. This designation means that the person named as additional authorized signatory shall have authority during the owner's lifetime to withdraw moneys from the deposit account or represented by the certificate of deposit. Moneys remaining in the account or represented by the instrument upon the owner's death shall become part of the deceased owner's estate, subject to the deceased person's will or applicable law if the deceased person left no will. The bank may release all moneys in the account or represented by the certificate to, or honor checks or orders drawn by, or withdrawal requests from, the authorized signatory until notified of revocation of the authority.

(g) Subsections (c)-(f) shall not apply to any accounts in existence prior to January 1, 1989.

Tenn. Code Ann. § 45-2-703 (2007).

Danny Haire argues that another statute, this one dealing with payable on death accounts, when read together with Tenn. Code Ann. § 45-2-703 establishes that designation of joint tenant with right of survivorship may be altered only upon agreement by all designated joint tenants, not merely one. Tenn. Code Ann. § 45-2-704 provides:

(a)(1) Whenever any deposit is made in any bank by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust is given in writing to the bank, the bank is entitled to deem the following with respect to the deposit, that:

(A) The person designated as trustee is the owner of the deposit account;

(B) The owner retains the right during the owner's lifetime to withdraw, assign or pledge the balance of the deposit account, in whole or in part, as though no survivor beneficiary had been named, and to delete or change a survivor beneficiary; and

(C) The interest of a person designated as beneficiary shall not vest until the death of the owner, or in the case of joint owners, until the death of the last surviving owner, and the interest shall be subject to any lien, assignment, pledge, right of offset or other claim that the bank could have asserted against the owner.

(2) No change in the designation of the survivor beneficiary is valid unless executed on a form and in a manner prescribed by the bank.

(3) The following terms shall be deemed to apply to the account, unless the owner notifies the bank otherwise:

(A) The interest of the beneficiary in the account vests, only if the beneficiary survives the last surviving owner;

(B) Multiple beneficiaries surviving the last surviving owner shall be entitled to equal shares of the account; and

(C) If no beneficiary survives, the account shall remain in the estate of the last surviving owner.

(4) When a deposit account is so established, the account, or any part of the account, or any interest in the account, may be paid to any owner during the owner's lifetime. On the death of the last surviving owner, the deposit account, or any part of the account, or interest in the account, unless otherwise provided by notice to the bank and its acknowledgement, may be paid either:

(A) To each designated beneficiary in equal shares; or

(B) To all beneficiaries as tenants in common, the duty of any apportionment among beneficiaries devolving to the beneficiary or beneficiaries receiving payment; and the receipt or acquittance of the person or persons so paid shall be a sufficient release and discharge of the bank from liability to any person for payment.

(5) In the event that any beneficiary, or any other person, contests any payment to a beneficiary, the bank may interplead the funds into a general sessions court, circuit court, or probate court with appropriate jurisdiction. A bank initiating an interpleader action shall be entitled to recover from the funds tendered the costs of the action, including reasonable attorneys' fees.

(6) In determining persons to be paid, or shares to be paid, if a bank chooses to pay more than one (1) beneficiary, a bank is entitled to presume the survival of an owner, or beneficiary, and no payment need be made to a beneficiary until the person's entitlement by right of survivorship is confirmed by official death certificate or other proof acceptable to the bank.

(b)(1) Any person, or persons jointly as tenants with right of survivorship, owning a deposit account may enter into a written contract with any bank whereby the balance of the deposit account may be made payable on the death of the last surviving owner to another person or persons, notwithstanding any provisions of law to the contrary.

(2) In creating the account, "payable-on-death" or "payable on the death of" may be abbreviated to "P.O.D."

(3) The contract shall be deemed to contain a right on the part of an owner during the owner's lifetime both to withdraw, assign or pledge the balance of the deposit account, in whole or in part, as though no death payee had been named, and to delete or change a designated death payee.

(4) The interest of a death payee shall be deemed not to vest until the death of the owner, or, in the case of joint owners until the death of the last surviving owner, and the interest shall be subject to any lien, assignment, pledge, right of offset or other claim that the bank could have asserted against the owner.

(5) The following terms shall apply to the account, unless the contract provides otherwise:

(A) The interest of a death payee in the account vests only if the payee survives the last surviving owner;

(B) Multiple death payees surviving the last surviving owner shall be entitled to equal shares of the account; and

(C) If no death payees survives, the account shall remain in the estate of the last surviving owner.

(6) No change in the designation of a death payee shall be valid unless executed on a form and in a manner prescribed by the bank and authorized by all account owners living at the time of the change.

(7)(A) When a deposit account is so established, the account, or any part of the account or any interest in the account, may be paid to any owner during the owner's lifetime. On the death of the last surviving owner, the deposit account, or any part of the account or any interest in the account, unless otherwise provided in the contract, may be paid either:

(i) To each designated death payee in equal shares; or

(ii) To all death payees as tenants in common, the duty of any apportionment among death payees devolving to the death payee or payees receiving payment;

(B) The receipt or acquittance of the person or persons paid shall be a sufficient release and discharge of the bank from liability to any person for payment.

(8) In the event that any death payee or any other person contests any payment to a death payee, the bank may interplead the funds into a general sessions court, circuit court, or probate court with appropriate jurisdiction.

A bank initiating an interpleader action shall be entitled to recover from the funds tendered the costs of the action, including reasonable attorneys' fees.

(9) In determining persons to be paid, or shares to be paid, if a bank contracts or chooses to pay more than one (1) death payee, a bank is entitled to presume the survival of an owner, or death payee, and no payment need be made to a death payee until the person's entitlement by right of survivorship is confirmed by official death certificate or other proof acceptable to the bank.

(c) No bank so paying the survivor or death payee shall be liable for any estate, inheritance or succession taxes due this state.

(d)(1) Notwithstanding any provision of this section or any other law to the contrary, nothing contained within this section shall be construed to prevent a living trust from being designated as a beneficiary of a payable-on-death account.

(2) Prior to accepting the designation of a living trust as beneficiary, a bank may require the account owner to deliver a copy of:

(A) Certificate or affidavit of trust:

(i) In the form and containing the information required by the bank;

(ii) Signed by the grantor, trustee or both; and

(iii) Notarized; or

(B) Other documents establishing the trust as may be acceptable to the bank.

(3) A bank may rely on the continuance of the trust and the information provided in the certificate, affidavit or other documentation, until the bank receives actual notice of any amendment, revocation or change, including, but not limited to, appointment of a co-trustee or successor trustee, or removal of a trustee. Actual notice shall not be effective until delivery of documentation acceptable to the bank to support the amendment, revocation or change.

Tenn. Code Ann. § 45-2-704 (2007).

The Bank argues in response that Danny Haire's reliance on Tenn. Code Ann. § 45-2-704 is misplaced and that Tenn. Code Ann. § 45-2-703 contains no such requirement for unanimous consent. In any event the Bank argues that Danny Haire has failed to identify any contract, statute or case establishing that the Bank could be liable to him for the actions undertaken in this case by Decedent or her attorney-in-fact.

In the case of *Simmons v. Foster*, this Court discussed a bank's liability for payments from joint accounts as follows:

Defendants Foster and the bank argue that they are absolved from all liability for their payment of joint accounts to Mrs. Cowden by the operation of the above statute. Plaintiff contends that while the statute protects the bank when it pays upon demand by either joint tenant of a joint account, it does not allow a bank to refuse the initial demand of the legal representative of the deceased joint tenant who funded the account. While it is arguable that the statute does not apply to a joint account where there is no right of survivorship since the statute requires that the account be "payable to either, or survivor," we think the statute applies even where the account is not a joint survivorship account. The comma after "either" and the word "or" seem to indicate that if the account is payable to either party, or to either party or survivor that the bank is protected if it pays the funds to the survivor.

This holding is supported by the obvious policy behind the enactment of the statute. The bank is a mere stakeholder of the funds in a joint account. It is unable to determine who is legally entitled to such funds upon the death of one of the parties. In the absence of a contract the funds may belong to the survivor, the estate of the decedent, or to both in the same ratio as their contributions to the account. Such was the state of the law when T.C.A. § 45-2-703 was enacted in 1969 prior to *Lowry*. The position of the bank was quite precarious even with regard to apparent survivorship accounts prior to the adoption of the contract theory since the survivorship aspect of each joint account was dependent on the facts in each case and the existence of a bank signature card was not conclusive. Virtually the same situation exists subsequent to *Lowry* relative to joint accounts with bank signature cards. Therefore, the bank is protected by the statute when after the death of one of the joint owners of the account it pays the funds in the accounts to the other joint owner. It does not affect the rights of third parties, such as the plaintiff in this case, who may have a claim on the funds against the other joint owner. It merely relieves the

-17-

bank of any liability to that third party for paying funds to the person shown on their records as a joint owner.  Therefore the Trial Court was correct in dismissing the complaint against the bank and Mr. Foster.

*Simmons v. Foster*, 622 S.W.2d 838, 843 (Tenn. Ct. App. 1981).

In the present case, the following relevant facts may be adduced from Danny Haire's complaint.  Decedent designated Danny Haire as joint tenant with right of survivorship on her bank accounts funded solely with her funds following her husband's death.  After a family disagreement, Decedent took steps to remove Danny Haire as joint tenant with right of survivorship on those accounts.  As a result, upon Decedent's death, Danny Haire never received the funds he believed he was entitled to as joint tenant with right of survivorship, and no one had asked his permission to modify his status on the accounts.  The issue before us, as it was before the Trial Court, is whether Danny Haire's complaint alleged sufficient facts to survive the Bank's motion to dismiss.

At oral arguments, counsel for Danny Haire acknowledged that she could cite to no contract governing the joint tenancy, and that no contract was produced in the proceedings below.  Counsel argued that for purposes of a motion to dismiss, the allegation that a contract had been breached should be sufficient to withstand a motion to dismiss, and that, at any rate, the joint tenancy with right of survivorship was broken wrongly and that no additional contract term need be cited.

We respectfully disagree.  In order to withstand the Bank's motion to dismiss, Danny Haire must have alleged sufficient facts which, taken as true, could result in the Bank being liable to him for its permitting unilateral changes to the joint accounts.  It is unclear to us how, taking all of Danny Haire's allegations as true, the Bank would be liable.  It is no small matter to a breach of contract claim that a contract is not produced or cited.  In this case, the Bank was a mere stakeholder for the funds in the joint account.  When Decedent designated Danny Haire as a joint tenant with right of survivorship to her accounts, the Bank executed her wishes.  When Decedent removed Danny Haire as joint tenant on the accounts, the Bank also executed her wishes.  Danny Haire acknowledges that Decedent could have withdrawn the entire sum from the joint accounts if she wished.  That effectively is what happened here.

We are not tasked in this appeal with determining any liability for the Haire siblings for their role in these events or any possible claim Danny Haire might have against Decedent's estate.  We are concerned only with the Bank's role herein.  In our judgment, the Bank simply did what it was asked to do by an account holder as allowed by Tennessee law.

-18-

Taking all of the factual allegations in Danny Haire's amended complaint as true and construing the amended complaint liberally in favor of Danny Haire, as we must at this stage, we agree with the Trial Court and hold that Danny Haire failed to state a claim for which relief may be granted.  We affirm the judgment of the Trial Court.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below.  The costs on appeal are assessed against the Appellants, Phillip Daniel Haire, individually, and as personal representative of the Estate of Ella Mae Haire, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE