IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 14, 2021 Session

## KELLY TURNER ET AL. v. WW STEEPLECHASE, LLC., ET AL.

**Appeal from the Circuit Court for Knox County
No. 1-171-18 Kristi M. Davis, Chancellor**

———————————————————

## No. E2020-00579-COA-R3-CV

———————————————————

The issues on appeal arise from a personal injury action commenced by two tenants of an apartment complex against the owner of the complex and the property management company. The complaint alleged that one of the plaintiffs fell through an inadequately supported floor vent in the master bedroom of their apartment. The plaintiffs asserted that the management company should have discovered the defective condition while conducting maintenance and repairs on the apartment. The trial court summarily dismissed the complaint after finding the undisputed facts showed the defect was concealed and the management company had no duty to test the vent's structural integrity. Prior to entry of a final judgment, the plaintiffs then filed an amended complaint based on negligence per se against only the management company. The plaintiffs asserted that a local building code established a minimum live load for apartment floors. The court dismissed the amended complaint after finding the building code did not apply. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

T. Scott Jones and Chris Beavers, Knoxville, Tennessee, for the appellants, Kelly Turner and Justin Turner.

Sean W. Martin and Chancey Randall Miller, Chattanooga, Tennessee, for the appellees, SRA Management, LLC and WW Steeplechase, LLC.

## OPINION

In March 2017, Kelly and Justin Turner ("Plaintiffs") moved into Unit 4407 of the Steeplechase Apartments in Knoxville, Tennessee. Unit 4407 was one of 50 townhomes in the complex. Like the others, Unit 4407 featured a two-story living arrangement with a carpeted master bedroom located directly above the living room. The master bedroom had

one removable heating, ventilation, and air conditioning ("HVAC") vent on the floor. The vent was placed over a duct opening in the carpet and subfloor.

Plaintiffs lived in Unit 4407 for nearly a year without issue. Then, in mid-February 2018, the vent buckled and collapsed under Ms. Turner's weight. Her leg went through the carpet, the subfloor opening, and the HVAC duct, and it protruded into the living room below.

Soon after the incident, Plaintiffs hired an engineering forensic investigator, Charles M. Coones, to inspect the vent and surrounding area. In his report, Mr. Coones described how "[r]emoval of the register exposed the opening in the carpeting," which "extended past the opening cut in the subfloor." An included photograph showed Mr. Coones "[p]eeling back the carpet" to expose the overlap. After measuring the subfloor opening, Mr. Coones concluded that "[t]he carpet was the only support for the register that prevented it from falling through the hole in the subfloor." According to Mr. Coones's measurements, the metal register was about 7.5 inches by 12.375 inches, while the subfloor opening was around 7.4 inches by 12.75 inches.

Mr. Coones reported that the disparity between the HVAC vent and the subfloor opening violated Chapter 16 of the Knox County Standard Building Code, which required a "minimum live load" of 40 pounds per square foot ("PSF"). Mr. Coones concluded that the carpet "was adequate t[o] support the light metal register, but not the partial weight of an occupant." Thus, Mr. Coones conjectured that the "oversize opening cut in the subfloor resulted in an unseen, undetectable, dangerous condition." He compared the placement of the vent to "leaving a concealed hole in the floor."

Three months later, Plaintiffs commenced this action against the owner of the apartment complex, WW Steeplechase, LLC ("Steeplechase"), and the apartment management company, SRA Management, LLC ("SRA"), (collectively, "Defendants") for negligence. Plaintiffs alleged, *inter alia*, that Defendants knew or should have known the floor vent was in a dangerous condition. Defendants answered the complaint, denied the allegations, and raised several affirmative defenses.

## I. SUMMARY DISMISSAL OF THE OWNER, STEEPLECHASE

In September 2018, Steeplechase moved for summary judgment[1] based on the affidavits of two property managers, Meredith Sharpe and Ashley Robu, and a maintenance supervisor, Tony Manos. All three denied knowing about the floor vent's condition in

---

[1] SRA, the property management company, did not file its Motion for Summary Judgment until after the trial court had granted summary judgment to Steeplechase.

February 2018. They specified that they observed no issue with the vent, and no tenant of Unit 4407 ever reported that the vent was "in a dangerous state."

In response, Plaintiffs filed the affidavit of Mr. Coones and his report. In his affidavit, Mr. Coones stated that Defendants "should have known about the extraordinarily dangerous condition of the master bedroom floor vent" because "the building at issue had been in place for at least twenty-five (25) years." Mr. Coones explained that "through constructions and regular maintenance that a reasonable landlord would perform during this time, [Defendants] should have discovered that the floor vent was unsupported."

At a hearing in January 2019, Plaintiffs conceded there was no evidence that Steeplechase knew of the vent's condition. And Plaintiffs admitted that the only evidence of constructive knowledge was Mr. Coones's affidavit and report. Steeplechase objected to Mr. Coones's affidavit because he was not qualified to testify on what a "reasonable landlord should or should not discover."

After hearing from the parties, the trial court found no evidence that Steeplechase had constructive notice, reasoning that the evidence established a "defective condition that could not have been discovered but for pulling up the carpet and seeing that [the] hole for the return [was] bigger than the actual vent." The court found the building code was irrelevant because Plaintiffs had not claimed negligence per se. Thus, the court granted Steeplechase's Motion for Summary Judgment. In its Order of February 11, 2019, the trial court specified that the dismissal was a final judgment for Rule 54.02. Later that month, Plaintiffs moved to alter or amend the judgment. The trial court denied their motion after a hearing in April 2019, and Plaintiffs do not appeal the summary dismissal of Steeplechase.

## II. Dismissal of Claims Against the Management Company, SRA

After the trial court denied Plaintiffs' Motion to Alter or Amend its order summarily dismissing the claims against Steeplechase, SRA moved for summary judgment. Like Steeplechase, SRA asserted there was no evidence it had actual or constructive knowledge of the vent's condition. In response, Plaintiffs again relied on Mr. Coones's affidavit as evidence that SRA should have discovered the construction defect in the exercise of reasonable diligence. SRA also moved for SRA's Motion to be continued until depositions of Ms. Rabu and Mr. Manos could be conducted.

After a hearing, the trial court denied Plaintiffs' Motion to Continue and granted SRA's Motion for Summary Judgment. As it had found with regard to Steeplechase, the trial court found no evidence that SRA had actual or constructive notice of the vent's condition. The court also found no evidence that SRA was under a duty "to test the structural integrity of the floor vent." Nevertheless, upon their oral motion at the hearing, the court granted Plaintiffs leave to amend their complaint to add a claim of negligence per se against SRA.

The trial court entered its written order granting SRA's Motion for Summary Judgment and granting Plaintiffs' motion to amend the complaint in July 2019. Plaintiffs then timely filed a Rule 59.04 Motion to Alter or Amend Judgment.

While Plaintiffs' Motion to Alter or Amend was pending, the parties deposed the Steeplechase maintenance supervisor, Tony Manos. Mr. Manos testified that his maintenance team would inspect an apartment and make necessary repairs whenever a tenant moved out. Mr. Manos stated that some maintenance projects were contracted out, such as replacing the carpet. If a contractor were used, a member of the Steeplechase maintenance team would conduct a walk-through "to make sure everything was right."

Mr. Manos could not recall whether the carpet in Unit 4407 was replaced during his tenure, but he believed the carpet had been replaced five or six years ago. Mr. Manos explained that apartments had white carpet when he arrived, and the carpet in Unit 4407 was brown when the alleged incident occurred in 2018.

Mr. Manos testified that it was also common for his team to look at floor vents. He said the vents would be removed if there was trash in the duct below, and the ducts would be replaced if damaged and unrepairable. But Mr. Manos estimated that his team replaced just two or three vents per year. Mr. Manos also testified that his team never had a floor vent that was "just falling through the floor."

After obtaining the deposition of Mr. Manos, Plaintiffs filed a supplemental brief supporting their Motion to Alter or Amend Judgment. Plaintiffs contended that Mr. Manos's testimony was new evidence that the vent's condition was easily discoverable and should have been discovered during routine maintenance.

After a hearing on November 8, 2019, the trial court denied Plaintiffs' Motion to Alter or Amend. The court found "[n]othing in Mr. Manos's testimony establishe[d] that the hole size of the vent would or should have been discovered during routine maintenance before a new lessee moving into the apartment."

### III. THE FIRST AND SECOND AMENDED COMPLAINTS

Meanwhile, in August 2019, Plaintiffs filed their Amended Complaint and asserted a claim for negligence per se against SRA. Plaintiffs alleged "the condition of the floor vent . . . violated the 2018 International Building Code" and "similar provisions of every building code in place in Knoxville, Tennessee from the time of the accident back to the time the building was initially built." Plaintiffs averred that the building codes required a minimum live load of 40 PSF, which "the floor vent at issue fell far short of."

SRA promptly filed a Motion to Dismiss the Amended Complaint, asserting, *inter alia*, that the Amended Complaint failed to identify the building code with specificity and

failed to describe "[t]he manner in which" SRA violated the code, as required by Tenn. R. Civ. P. 8.05. Not to be deterred, Plaintiffs filed a second Motion to Amend Complaint to cite the local building code.

The trial court granted the second Motion to Amend. Thus, in January 2020, Plaintiffs filed their Second Amended Complaint, which asserted that "the condition of the floor vent . . . violated Section 1607.1 of the 2018 International Building Code," as adopted by Knox County Code of Ordinances, Chapter 10, Article II, Sec. 10-3.

In January 2020, SRA filed a Motion to Dismiss Plaintiffs' claim of negligence per se. SRA asserted that § 1607.1 of the International Building Code ("IBC") did not apply. SRA argued that the IBC governs "the structural design of buildings, structures," and SRA did not own, lease, design, or construct the apartments. Further, SRA pointed out that Knox County did not adopt the 2018 IBC until November 2018—nine months after the alleged accident.

In response, Plaintiffs conceded that Knox County did not adopt the 2018 IBC until after the February 2018 incident. Still, Plaintiffs argued that Knox County had adopted the 2012 IBC, which included a similar minimum live load requirement. Plaintiffs also asserted that the 2012 IBC incorporated by reference the 2012 International Property Maintenance Code and the 2012 International Existing Building Code. Plaintiffs averred that the Property Maintenance Code applied "to existing structures and premises" and addressed the "responsibilities of owners, operators and occupants." Similarly, Plaintiffs contended that the Existing Building Code applied "to the repair . . . of all existing buildings." Plaintiffs claimed that the 2012 codes placed a duty on SRA—as the "operator" of the apartment complex—to maintain the apartments. Plaintiffs also argued that SRA's Motion to Dismiss should be treated as a motion for summary judgment because it required consideration of materials outside of the pleadings.

After a hearing in February 2020, the trial court granted SRA's Motion to Dismiss, finding that the codes imposed "a duty on designers and builders and not an apartment management company."

This appeal followed.

**ISSUES**

Plaintiffs raise two issues on appeal, both relate to its claims against SRA only:

I.  Whether the trial court erred in granting SRA's Motion for Summary Judgment by determining that SRA did not have constructive notice of the defective condition, i.e., the floor register being smaller than the return vent upon which it sat.

II. Whether the trial court erred by failing to treat SRA's Motion to Dismiss as a Motion for Summary Judgment.

## STANDARD OF REVIEW

This appeal requires us to review a grant of summary judgment. "Such rulings are reviewed by this court de novo, affording the trial court no presumption of correctness." *Snake Steel, Inc. v. Holladay Constr. Grp., LLC*, --- S.W.3d --- 2021 WL 2678347, at *3 (Tenn. 2021) (citing *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015)).

Likewise, we review a trial court's dismissal of a complaint under Tenn. R. Civ. P. 12.02(6) de novo without a presumption of correctness. *Pagliara v. Moses*, 605 S.W.3d 619, 625 (Tenn. Ct. App. 2020) (quoting *SNPCO, Inc. v. City of Jefferson City*, 363 S.W.3d 467, 472 (Tenn. 2012)), *appeal denied* (June 4, 2020).

## ANALYSIS

Plaintiffs contend the trial court erred by summarily dismissing the claims they asserted against SRA in the initial complaint. They also contend the trial court erred by granting SRA's Motion to Dismiss the negligence per se claim they asserted in the Second Amended Complaint. We will discuss each in turn.

### I. SRA'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs argue that the trial court erred in summarily dismissing their initial negligence claims against SRA because Mr. Coones's affidavit and Mr. Manos's deposition testimony established that a reasonable landlord would have discovered the defective vent through the exercise of reasonable diligence. We respectfully disagree for several reasons.

We find Plaintiffs' reliance on Mr. Manos's deposition testimony is misplaced. The trial court granted SRA's Motion for Summary Judgment in July 2019. Plaintiffs did not depose Mr. Manos until three months later, in October 2019. When the party moving for summary judgment "does not bear the burden of proof at trial," the party "may satisfy its burden of production . . . by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (emphasis in original). However, Tenn. R. Civ. P. 56.07 "authorizes courts to order continuances on summary judgment motions to allow a party opposing summary judgment to obtain affidavits, take depositions, or engage in other forms of discovery as may be ordered." *Id*. at 262 (citing Tenn. R. Civ. P. 56.07). Once a judgment has been entered, however, a motion to alter or amend cannot be sustained based on "newly discovered evidence" unless the moving party shows that the new evidence was not known "and that

it could not have been known to him through exercise of reasonable diligence." *Burris v. Burris*, 512 S.W.3d 239, 248 (Tenn. Ct. App. 2016).

Here, Plaintiffs asked for a continuance of SRA's Motion for Summary Judgment on the simple negligence claim so Plaintiffs could take Mr. Manos's deposition. The court, however, denied Plaintiffs' request and granted SRA's Motion on the evidence already in the record. Plaintiffs then filed a Motion to Alter or Amend the trial court's judgment, and they amended their complaint to add a claim of negligence per se. Plaintiffs deposed Mr. Manos after amending the complaint. They then used Mr. Manos's testimony as "new" evidence supporting their Motion to Alter or Amend the summary judgment on their claim of simple negligence. While the trial court considered Mr. Manos's deposition testimony, it denied the Motion to Alter or Amend because there was no evidence that inspection of the floor vent was part of the inspection process when a tenant moved out. Significantly, Plaintiffs have not appealed the denial of their Motion for Continuance and Motion to Alter or Amend.

Thus, the question is whether the trial court correctly decided that Plaintiffs' evidence—as of July 2019—was insufficient to establish their simple negligence claim.

In response to SRA's Motion for Summary Judgment, Plaintiffs relied on the affidavit of Mr. Coones, who opined that "the landlord" would have discovered the vent's dangerous condition through regular maintenance:

> The landlord . . . should have known about the extraordinarily dangerous condition of the master bedroom floor vent, as the building at issue had been in place for at least twenty-five (25) years, and, through construction and regular maintenance that a reasonable landlord would perform during this time, they should have discovered that the floor vent was unsupported.

On appeal, SRA contends that Mr. Coones was "unqualified to provide testimony as to what a reasonable landlord should have known or discovered." The trial court did not address the adequacy of Mr. Coones's qualifications. Instead, the court granted SRA's Motion for Summary Judgment, reasoning that the evidence showed "the dangerous condition . . . was concealed by carpeting" and SRA "did not have a duty to test the structural integrity of the floor vent."

In reaching its determination, the trial court relied on *Parker v. Holiday Hospitality Franchising, Inc.*, 446 S.W.3d 341 (Tenn. 2014). In *Parker*, the Tennessee Supreme Court found the undisputed evidence did not establish that a hotel owner had constructive notice of a defective condition created by an independent contractor's negligence. *Id*. at 343. The Court pointed to evidence that the defective condition "was concealed behind a sheetrock wall and was not visible to [the owner] or any [h]otel staff after construction was completed." *Id*. at 352. Significantly, the Court noted that "the measures that would have been required to discover the defect, such as dismantling the exterior sheetrock wall, [were]

far beyond the parameters of what the duty of reasonable care requires of property owners." *Id*.

Plaintiffs contend that this case is distinguishable from *Parker* because Mr. Coones's affidavit and report show that "no physically destructive testing would have been required to determine that the floor vent was dangerous." Plaintiffs argue that "all such an inspection would require would be that somebody pull up the vent and look at it." We respectfully disagree with Plaintiffs' characterization of the evidence.

Mr. Coones concluded that the "oversize opening cut in the subfloor resulted in an unseen, undetectable, dangerous condition." Thus, it was the *subfloor opening* that was defective—not the vent itself. Further, Mr. Coones described his inspection as involving more than simply "pull[ing] up the vent and look[ing] at it." Mr. Coones stated that he (1) pulled up the vent, (2) measured the vent and carpet opening, (3) "[p]eel[ed] back the carpet," and (4) measured the subfloor opening. According to his measurements, the vent "measured approximately 7 1/2 inches wide by 12 3/8 inches long," and the subfloor opening measured "approximately 7 7/16 inches wide by 12 3/4 inches long." The opening in the carpeting was "about 6 1/4 inches wide by 12 inches long." Based on this information, Mr. Coones deduced that "[t]he carpet was the only support for the register that prevented it from falling through the hole in the subfloor."

With no explanation, Mr. Coones concluded in his affidavit that a "reasonable landlord" would "have discovered that the floor vent was unsupported."[2] Plaintiffs failed to provide evidence of what "construction and regular maintenance" would be performed by a landlord that involved a detailed measurement and comparison of the vent and subfloor opening—especially when, as Mr. Coones also noted, the minute difference was concealed by a layer of carpeting.

Therefore, we agree with the trial court's conclusion that the evidence showed "the measures that would have been required to discover the defect . . . [were] far beyond the parameters of what the duty of reasonable care requires of property [managers]." *Parker*, 446 S.W.3d at 352.

## II. DISMISSAL OF THE NEGLIGENCE PER SE CLAIMS AGAINST SRA

Plaintiffs contend the trial court erred in granting SRA's Rule 12.02 Motion to Dismiss their negligence per se claim. Their contention is based on an alleged procedural error. Plaintiffs contend the trial court erred by not converting SRA's Motion to Dismiss into a Motion for Summary Judgment under Tenn. R. Civ. P. 56 because resolving SRA's

---

[2] Strictly speaking—as Mr. Coones noted in his report—the vent *was* supported, albeit insufficiently.

Motion required consideration of matters outside the pleadings. We find no error in this regard.

Generally, Tenn. R. Civ. P. 12.02 requires courts to treat motions to dismiss for failure to state a claim as motions for summary judgment under Rule 56 if matters outside the pleadings are presented to the court:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Tenn. R. Civ. P. 12.02. However, it is well established that "[c]ourts resolving a motion to dismiss may consider 'items subject to judicial notice . . . without converting the motion into one for summary judgment.'" *Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 74 (Tenn. Ct. App. 2016) (quoting *Haynes v. Bass*, No. W2015-01192-COA-R3-CV, 2016 WL 3351365, at *4 (Tenn. Ct. App. June 9, 2016)).

In July 2019, Plaintiffs received permission to file their Amended Complaint and add a claim of negligence per se. Once they filed the Amended Complaint in August 2019, SRA moved to dismiss the Amended Complaint because, *inter alia*, Plaintiffs failed to identify the applicable Knox County ordinance as required by Tenn. R. Civ. P. 8.05.[3] On the day of the hearing, Plaintiffs filed a second Motion to Amend to cure the defect. The trial court granted the Motion to Amend and denied SRA's Motion to Dismiss as moot.

---

[3] Tennessee Rule of Civil Procedure 8.05(1) requires pleadings to clearly identify and state the substance of any ordinance relied upon:

> Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly identified.

Tenn. R. Civ. P. 8.05. In other words, the pleading must cite the specific ordinance or regulation alleged to be violated. *Orndorff v. Calahan*, No. M2007-02060-COA-R3-CV, 2008 WL 4613546, at *8 (Tenn. Ct. App. Oct. 9, 2008) (citing *Polings v. Goins*, 713 S.W.2d 305, 306 (Tenn. 1986)). Also relevant to the issue at hand, Tennessee Rule of Evidence 202(b) permits courts to take judicial notice of "all duly enacted ordinances of municipalities or other governmental subdivisions" so long as "reasonable notice" is provided to opposing parties.

In their Second Amended Complaint, Plaintiffs identified the relevant local ordinance as Ch. 10, Art. II, § 10-31 of the Knox County Code, and they described the ordinance as requiring a 40 PSF minimum live load for apartment floors. Shortly thereafter, SRA moved to dismiss the Second Amended Complaint because, *inter alia*, Knox County did not adopt Ch. 10, Art. II, § 10-31 until November 2018, which was well after the incident occurred.

One week before the scheduled hearing, Plaintiffs filed a reply brief that cited, for the first time, Knox County Ord. O-12-9-101. Plaintiffs contended that Ord. O-12-9-101 was operative at the time and included the same 40 PSF requirement as Ch. 10, Art. II, § 10-31. Plaintiffs did not, however, specifically request the trial court to take judicial notice of Ord. O-12-9-101, and Plaintiffs did not submit a copy of the ordinance. For the first time, Plaintiffs also cited several other international building codes that Ord. O-12-9-101 purportedly adopted. Plaintiffs asserted these additional codes placed a duty on SRA to inspect Unit 4407 and ensure it complied with the 40 PSF requirement. Thus, Plaintiffs' Second Amended Complaint complied with Tenn. R. Civ. P. 8.05(1) by identifying and describing Ch. 10, Art. II, § 10-31 as the operative ordinance for purposes of their negligence per se claim. In its ruling at the hearing on February 28, 2020, the trial court accepted Plaintiffs' assertion that Ord. O-12-9-101 included a requirement substantially similar to that in Ch. 10, Art. II, § 10-31.

As noted above, local ordinances are "subject to judicial notice" under Tenn. R. Evid. 202(b) and "[c]ourts resolving a motion to dismiss may consider 'items subject to judicial notice . . . without converting the motion into one for summary judgment.'" *Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d at 74 (quoting *Haynes v. Bass*, No. W2015-01192-COA-R3-CV, 2016 WL 3351365, at *4). Accordingly, the trial court was authorized to review SRA's Motion to Dismiss under Tenn. R. Civ. P. 12.02(6).

For the foregoing reasons, we affirm the trial court's decision to dismiss Plaintiffs' claim for negligence per se.

## IN CONCLUSION

The trial court's judgment is affirmed, and this matter is remanded with costs of appeal assessed against Kelly and Justin Turner.

_____
FRANK G. CLEMENT JR., P.J., M.S.